## WARNIBOLD v. SCHLICTING.

1. GOLD; LEGAL TENDER TREASURY NOTES. The defendant, prior to the passage of the act of Congress of February 25th, 1862, loaned to the plaintiff seven hundred dollars in American gold, who executed his promissory note therefor, payable in "U. S. gold," to secure the payment of which he also executed a deed of trust. *Held:*

   1. That it was a loan of money, and was payable in the medium or currency declared by law to be a legal tender in the payment of debts.

2. That the transaction cannot be regarded as a sale of gold recognized as valid by §§ 4 and 5 of the act of March 3d, 1863.

3. That a tender of the full amount due on said note in "United States legal tender treasury notes, issued under the act of Congress of February 25th, 1862," entitled the plaintiff to a surrender of the note and deed of trust.

*Appeal from Scott District Court.*

MONDAY, JUNE 6.

IN this case it appears, from the agreed statement of facts, that on the 29th of October, 1860, respondent loaned to complainant $700; that the money consisted of American gold; that on the same day complainant executed his note, due one year after date, payable in "U. S. gold;" and that on the 16th of November, 1863, he tendered the full amount due on said note, in "United States legal tender treasury notes, issued under the act of Congress of February 25th, 1862." Respondent refused to receive the same, and thereupon complainant, keeping his tender good, brought this bill to compel a surrender of the said note, and the deed of trust given to secure the same. Decree for complainant, and respondent appeals.

*H. R. & E. Claussen* for the appellant, conceded the constitutionality of the act of February 25th, 1862, but contended that it did not abrogate the principles of law governing the rights of the parties under the contract, and that under the contract the plaintiff was entitled to United States gold, or its value in currency or money; citing the cases of *Meyer* v. *Roosevelt*, N. Y. Court of Appeals, unreported.

*J. W. Thompson* for the appellee, contended: 1. That the act making treasury notes a legal tender in the payment of debt is constitutional and valid; citing *Reynolds* v.

Warnibold v. Schlicting.

*The State Bank*, 1 Am. Law Reg., 669; *Hayne* v. *Powers*, S. C. N. Y., Am. Law Reg., June, 1863; *The Metropolitan Bank et al.* v. *The Bank Department*, and *Myers* v. *Roosevelt*, N. Y. Court of Appeals, not reported; 2. That under said act the tender made in this case was sufficient to entitle the plaintiff to a surrender of his note and deed of trust.

WRIGHT, C. J.—Appellant states the legal proposition involved in this case thus: " Can the plaintiff to whom the defendant loaned $700 in gold, U. S. coin, pay that loan back in U. S. treasury notes, though he promised to repay the loan in coin?" In its discussion the constitutional validity of the act of February 25th, 1862, "An act to author- ize the issue of United States Notes," (ch. 33, p. 23, Laws 37th Congress, 2d session), is not denied. We are therefore to treat the law as having full force and validity. Conceding this, appellant contends that the act " has not abolished the general principle of law, that if a man borrows a certain thing, and promises to pay in kind, he must perform his obligation by paying just what he received, and promised to return."

It will be observed that this was a loan of money, and that the contract was made prior to the taking effect of the act of February 25th, 1862. The incorporation of the words, " U. S. gold," into the note or contract, did not change or increase the obligation of the maker to pay in the medium or currency declared by law to be a legal tender in the payment of debts. That is to say, if these words had not been used, the maker, but for the law of Congress making treasury notes a legal tender, would have been compelled to pay gold or silver. And this would have been his legal duty, whether he received from the creditor gold, silver, bank paper, horses, or any other consideration. For prior to such legislation, all debts, public and private, had to be paid in what was called the " hard money medium,". and

no creditor was bound to receive anything else.  His right to demand the gold or silver was perfect, complete, absolute and indisputable, where the consideration or loan was bank paper, bills of credit, or anything of the like kind, and the right was no greater, nor any better recognized, when the loan or consideration was gold or silver.  And it made no difference whether the contract expressed upon its face that it was payable in gold or silver, or whether such an undertaking was omitted.  If omitted, the law made the contract —the law implied the obligation—as fully and entirely as though its very words had been embodied in the note or contract.  And keeping in view these well settled and undisputed principles, it seems to us, the validity of the act of Congress being conceded, that the case before us is easily settled.  The Congress, with full power to do so, as is admitted, has declared that these treasury notes shall be received in payment of all debts, public and private (with certain exceptions in the act stated), and thereunder they have the same constitutional value as gold and silver, and the obligation of the creditor to receive and the right of the debtor to tender them is the same as if they were made of coin or metal instead of paper.  From this argument it seems to us there is no just escape.  Gold, silver, treasury notes, are placed by the law upon the same basis.  Each and all are made a legal tender.  Gold will and must be received in satisfaction of the demand, whatever the nature of the consideration, and whether it is payable in gold or anything else.  Treasury notes are declared equally a legal tender, or to be legally equivalent to gold, and must be received and may be tendered wherever the coin would or could be.

We cannot but think that it is a misuse of terms to speak of a debtor's being compelled to return gold or the article in kind where he borrows gold and promises to pay in the same.  In such transactions, gold is not a commodity, but money.  Nothing more, and nothing less.  The borrower

borrows money, and promises to return it. If he borrows bank paper, he treats it as money, and promises to repay it as such. But he can only repay it by offering that which the law says is a legal tender. So if he borrows gold, he may pay it in silver; if in silver, in gold; if treasury notes, in silver; if gold or silver, in treasury notes. And the law applicable to the repayment or return of a commodity (as wheat, brick and the like), and regulating the measure of damages when there is a failure to return in kind, has really nothing to do with the question. Complainant's obligation was to pay so many dollars ($700) and not a commodity, or so much gold. This gold had and has a statutory value. It circulated as money. The parties dealt with it as having an artificial value, as so many dollars, and not as a commodity having a specified and agreed intrinsic worth or value. Legally, each dollar passed for one hundred cents; and legally it had no other value. Congress has given a like value to another medium, and when the same number of dollars or cents are returned, in this other equivalent medium, as are due in the medium loaned, or which passed from the lender to the borrower, the demand is satisfied. Nor does the fact that the borrower asks to have his note and trust deed surrendered make any difference. He occupies, in fact, the same position as though he was pleading this tender to an action at law to recover upon the note. If he has paid the note, he has a right to its surrender, and to have the incumbrance on his land removed. Or, if he has tendered the money, and kept the same good, he has a like right. Had he tendered gold, there would be no question as to his right to demand the relief asked in this case. As we have seen, he did tender that which is legally equivalent, and his remedy is equally complete. When he made such a tender, he offered to do equity, and has the same standing in this court as though he had offered anything else which the law recognizes as a legal tender. The credi-

tor's right was to have his debt paid in lawful money, whether it should be called coin or paper. The market fluctuations in the values of these several mediums can not affect the duty of the creditor to receive, and the right of the debtor to pay, whichever of such mediums the latter may choose to offer. A legal tender note of the denomination of ten dollars, has the same legal value for the purposes of money as a coined eagle. Each has the value of ten dollars money of account. *Metropolitan Bank* v. *Superintendent of Bank Department, Meyer* v. *Rosevelt,* N. Y. Court of Appeals, 1863. The debtor is not to be placed in a worse position, nor regarded as occupying a less tenable ground, in a court of equity, because he has tendered one kind of lawful money instead of another, and which in the measure of its value may be affected by extraneous causes, fluctuating in their character, but which, nevertheless, have nothing to do with the legal properties imparted to it by the law-making power.

Let us suppose that the creditor had brought his action to foreclose his deed of trust, or to recover the $700 loaned, with its interest. The judgment would unquestionably have been for that sum, omitting any reference to the kind of money to be paid in liquidating the same, whether gold, silver, treasury notes, or anything else made by law a legal tender. It could make no difference that the parties had stipulated for one kind of currency, rather than another; for, in legal estimation, or to the mind of the court, when a recovery was sought, there could be no difference recognized between those things which the law treated as equivalent. Or, to speak more plainly, the judgment would not be for $700, with its interest, "payable in gold" or "silver," any more than it would be for horses, if payable in horses, or for treasury notes, if such was the contract. A judgment in such a proceeding is necessarily for so much; not gold, not silver, not treasury

notes, not any kind of money by name, but such a sum, payable of course in whatever the law esteems lawful, and has made a legal tender. *Wood* v. *Bullens,* 6 Allen, Mass. For the breach of the contract, whatever is current coin or money must be accepted as the equivalent, for this is the only termination which can be legitimately reached when the contract is sought to be and is merged into a judgment. These views and propositions fully recognized and well settled when applied to contracts payable in chattels, have equal weight and pertinency when the promise is to pay in any particular kind of currency. The judgment is not for the article in kind as promised, but for its value, and this where the same nominal quantities of each are declared by law to be equal, will be measured by the amount specified in the contract. "The ordinary, wise, and invariable course therefore is, and has been, to refer the injury inflicted by the breach of a contract to the period when the contract was broken, to examine what the injured party would have got if the contract had been fulfilled, and what he lost by its non-fulfillment, to estimate this in the currency of the commonwealth, and enter judgment for the amount thus ascertained." *Shoerberger* v. *Watts,* Law Reg., 1, 553. And by currency, as here used, is meant, of course, that which is declared to be money, and to be receivable for public and private debts, by the supreme or central power of the State or Government. And as this power, in this country, belongs to Congress, and not to the States, we refer to the national legislature to ascertain what modes or forms of value constitute the constitutional currency of the country.

Anything thus made a legal tender must be received in payment of a debt, and a party cannot, by inserting an obligation to pay in one rather than another of these legally equivalent values, compel payment in the coin or currency so named. Any other rule, it seems to us, would defeat

the whole purpose and policy of the law, and render nuga-
tory the provisions of the statute.   How more completely
could a discontented and law-resisting constituency defeat
the letter and spirit of an act which applies, without excep-
tion, to all debts and contracts?   If one man can do this,
so can another.   And if two, so a thousand, and all per-
sons in every department of life.   The consequence would
necessarily be, that a law passed because of a peculiar pub-
lic exigency—an exigency demanding the prompt exercise
of all the vital functions of the Government—passed even
for the very preservation of the national life, would become
inoperative in the individual or general transactions, and it
would be left to the citizen "to discriminate in a matter
when the law of the land had refused to distinguish."
Such a construction would be so utterly at war with the
spirit and policy of the law, that we are far from being
ready to adopt it.   In thus looking at our duty, we pro-
pose no unreasonable restraint upon the utmost freedom in
making contracts.   Beyond certain defined and necessary
limits, sanctioned alike by the inherent differences existing
in those constituting the body of society, and public policy,
courts do not, in general, interfere with any bargain which
parties may make, by nicely weighing the chances as to
whether it was provident or improvident, or whether it
would not have been more advantageous to one or both if
it had been different.   If, "however, the contract is con-
trary to law, and attempts to do or regulate in one way
that which the legislature has declared shall be done in
another, the law may and often will pronounce it void,
especially if the matter be one in which the whole com-
munity has an interest, and which does not exclusively
concern the individuals who made the contract."

These views are not answered by the thought that there
is or may be a difference in the market between coin and
treasury notes.   For if this difference is to govern courts

in the rendition of their judgments, then they must have reference to what the debtor will probably pay in, instead of estimating in numbers the dollars and cents ascertained to be due. And. suppose a court should go further, and attempt to ascertain and fix the compensation for the breach in failing to pay gold, such being the contract, how can it know in advance that the debtor may not pay in gold? If he does, then clearly the damages are estimated by the interest due to time of payment. That he will not, no court can determine in advance. Not only so, but the difference named arises rather from the laws of supply and demand than from any legal value which the one possesses over the other. Gold may fluctuate in the market; there may be a demand for it for the most legitimate purpose; gamblers may speculate in it at the risk of sacrificing the financial, if not the dearer interests and life of the nation, and yet when the legal test is applied, each dollar of every mode or form of currency, declared to be a legal tender, has the same value, without reference to the material of which it is composed. And we cannot resist the remark, that the sooner this is known, accepted, and acted upon, the better it will be for national, monetary and political integrity, as well as for individual and general morality, prosperity and success.

But we are referred to sections 4 and 5 of the act of March 3, 1863, Laws of Congress, vol. 12, 719, as favoring the view, that complainant was bound to pay gold. We do not understand, however, that this act has anything to do with a case of this character. There is no question but that a loan of gold or silver would be valid. But if made for an amount exceeding the par value of the sum loaned, pledged or deposited, the contract would certainly receive but little support or sanction under the statute relied upon by appellant. Indeed, these sections, instead of recognizing a difference in these legal equivalents, instead of sanc-

tioning the use of gold as a commodity in the market, seems designed to equalize the general currency and money in its strict or legal sense. The purchase or sale of gold or silver, coin or bullion, is a very different thing from loaning it. That this act recognizes this difference, the most casual reading will abundantly show.

We cannot further advert to the several propositions advanced in the carefully prepared argument of appellant. Substantially, they are noticed, more or less directly, in what has already been said, and it only remains to say that the decree below should be

Affirmed.