FEDERAL LAND BANK of Omaha, Appellee, v. MYRON E. WILMARTH et al., Appellants.

No. 42236.

FEBRUARY 6, 1934.

REHEARING DENIED JUNE 23, 1934.

R. Brown, and M. E. Wilmarth, for appellants.

Horace M. Towner, and Homer S. Stephens, for appellee.

KINDIG, J.—This action, as said in the preliminary statement, was brought by the plaintiff-appellee, the Federal Land Bank of Omaha, a corporation, to obtain, first, judgment on a promissory note; and, second, the foreclosure of a real estate mortgage. The note for $20,000 was signed on March 7, 1924, by the defendants-appellants Myron E. Wilmarth and Effie P. Wilmarth, husband and wife. Myron E. Wilmarth is an attorney at law, practicing his profession at Corning, Iowa. Said note, together with interest at the rate of 5½ per cent per annum, payable semi-annually, was payable to the appellee at its office in Omaha, Nebraska, according to an amortization plan. All payments of principal and interest on the note, according to the amortization plan, not made when due, were to bear interest from such due date to the date of payment at the rate of 8 per cent per annum. To secure the note, the appellants Myron E. and Effie P. Wilmarth executed to the appellee, at the time the note was made, a mortgage on certain real estate in Adams county.

Harry Wilmarth, a defendant-appellant, is the son of the appellants Myron E. and Effie P. Wilmarth. He was made a party to the present proceedings because of a certain assignment of rents accruing on the mortgaged premises. It is claimed by the appellant Harry Wilmarth that he is entitled to those rents.

Several installments of principal and interest, according to the amortization plan, were paid by the makers of the note and mortgage. According to the record, however, the appellants failed to pay the following installments on the note: First, the one due October

1, 1931, for $650; and, second, the one due April 1, 1932, for $650. Also the appellants failed to pay the 1930 taxes on the land, amounting to $126.65, which became delinquent and were paid by the appellee. Likewise, the appellants neglected to pay an insurance premium for $78 covering certain buildings on the mortgaged real estate. This insurance premium also was paid by the appellee. By authority of the provisions in the note and mortgage, the appellee declared the entire mortgage indebtedness due and unpaid because of the appellants' delinquency in paying the obligations above named. The declaration of forfeiture was made by the appellee through the commencement of foreclosure proceedings on October 28, 1932. In that foreclosure suit, the appellee asked judgment against the appellants Myron E. and Effie P. Wilmarth for the sum of $20,204.55, together with interest at the rate of 8 per cent per annum from August 1, 1932.

A defense to that foreclosure suit was made by the appellant Effie P. Wilmarth on the theory that she, in fact, was not a maker of the note. Her defense was sustained by the district court, and the appellee has not appealed. So far as the claims to the rent made by the appellant Harry Wilmarth are concerned, there is no controversy on this appeal. Consequently Effie P. Wilmarth and Harry Wilmarth appear to have little, if any, interest in the appeal. Myron E. Wilmarth, the appellant, on the other hand, seems to be the one principally involved on the appeal so far as the appellants are concerned. Hereafter, therefore, when we refer to the appellant, our reference will be to Myron E. Wilmarth. His defense is manifold.

At the outset, this appellant, in answering the appellee's petition, objected to the payment of 8 per cent interest on the indebtedness. According to his theory, the amount of interest above $5\frac{1}{2}$ per cent amounts to a mere penalty under the circumstances, and therefore will not be enforced in equity. Next, the appellant answered that he was not liable to the appellee for attorney fees on that portion of the debt, the due date of which was accelerated by the commencement of the suit, because the appellant had no knowledge or information of the appellee's intention to thus accelerate the debt, and therefore he had no opportunity to pay the same. Again in his answer, the appellant alleged that equity will not foreclose the mortgage at this time because of the abnormal deflation of farm values, and the monetary stringencies now existing. An emergency exists, the appellant declares, and, because of its severity, equity

will not enforce the note and mortgage and compel him to pay more than the present adjusted value of the moneys loaned on a previous date. Furthermore, the appellant in his answer stated that there was appropriated to the appellee by congress funds with which to refinance the appellant and others, and therefore the appellee is estopped from foreclosing the mortgage at this time. And, finally, the appellant asked that the foreclosure cause be continued until the 1st day of March, 1935, under the Iowa moratorium statute.

These defenses thus set forth in the answer were overruled by the district court, a judgment was entered on the note against the appellant, and the mortgage on the real estate was foreclosed as prayed. From that judgment, the appellant appeals.

▮ I. As before explained, the note in question under the amortization plan bears interest at the rate of 5½ per cent per annum, payable semi-annually. In addition to the foregoing provision in the note, and supplemental thereto, is the following: "All payments not made when due shall bear interest from the due date to the date of payment at eight per cent per annum." Throughout the note and mortgage, the 8 per cent interest after the maturity of a payment due, is mentioned by way of repetition and perhaps for clarity, but in each instance it is plain that the parties to the note and mortgage intended the above-quoted provision relating to the 8 per cent interest to stand without modification. This provision for the 8 per cent interest upon the contingencies mentioned amounts to a penalty, the appellant argues, and therefore cannot be enforced in equity. Such penalty arises, the appellant says, both with and without the acceleration of the due date provided for in the note and mortgage, as before explained. So far as the acceleration clause is concerned, there is no penalty. For many years, borrowers and lenders in Iowa have provided in their notes and mortgages for the option of acceleration on the failure to pay taxes, insurance, interest, or principal when due.

As said in Swearingen v. Lahner and Platt, 93 Iowa 147, reading on pages 150 and 151, 61 N. W. 431, 433, 26 L. R. A. 765, 57 Am. St. Rep. 261:

"Stipulations such as are found in these notes and in the mortgage under consideration are not regarded, in the nature of a *penalty or forfeiture*, and, for that reason, viewed with disfavor by the courts, but as agreements for bringing the notes to an earlier

maturity than expressed upon their face, and are to be construed and the intention of the parties ascertained by the same rules as other contracts. * * * So it has been held that, after the happening of the contingency which matures the note, the mortgagee cannot be compelled to accept the interest due and yield his claim for the whole amount. * * * Courts of equity *have no power to relieve* against the default and its consequences." (Italics supplied.)

To the same effect, see Moore v. Crandall, 146 Iowa 25, 124 N. W. 812, 140 Am. St. Rep. 276; Stern v. Rainier et al., 193 Iowa 665, 187 N. W. 442; Coffin v. Younker et al., 196 Iowa 1021, 195 N. W. 591; Collins v. Nagel, 200 Iowa 562, 203 N. W. 702; Jewell v. Logsdon et al., 200 Iowa 1327, 206 N. W. 136; Whitney v. Krasne, 209 Iowa 236, 225 N. W. 245; McKee, Executrix, v. Stewart, 211 Iowa 1185, 235 N. W. 286.

While such acceleration of the due date may be accomplished by proper action, yet a mere default in the payment in and of itself will not cause said acceleration. Such default merely confers upon the payee the option to declare the acceleration of the due date by the commencement of an action or otherwise. Whitney v. Krasne, supra; Collins v. Nagel, supra. But before accomplishing such acceleration, a demand on the debtor for payment is not essential. Moore v. Crandall, supra; Collins v. Nagel, supra; Coffin v. Younker et al., supra.

Therefore, in the case at bar the appellee, by commencing a suit, had a right under the provisions of the note, without previous demand on the appellant for payment, to accelerate the due date on all amounts named in the note because certain interest and principal were not paid when due. This right to accelerate the due date the appellee exercised by the commencement of his action on October 28, 1932, and at that time the entire amount of the indebtedness, through the acceleration, became due and payable. By so doing, the appellee did not impose a penalty upon the appellant. See cases above cited.

II. It is argued by the appellant, however, that a penalty was imposed by the appellee when the interest was increased from 5½ per cent per annum, payable semi-annually, to 8 per cent per annum. That penalty, the appellant argues, is inflicted because of a default. Consequently it is declared by the appellant that a court of equity will not enforce the penalty.

To sustain his argument at this point, the appellant cites Con-

rad v. Gibbon, 29 Iowa 120. A consideration of that case reveals that the appellant is in error on this point. The note in the Conrad case specifically provided for 20 per cent interest as a penalty. According to the note in that case, the increased interest was to be a penalty. Manifestly the increased rate of interest in the case at bar, due to the acceleration accomplished by the appellee, is not a penalty. Our courts have been enforcing similar provisions in notes, under the circumstances, as valid. See Swearingen v. Lahner and Platt (93 Iowa 147, 61 N. W. 431, 26 L. R. A. 765, 57 Am. St. Rep. 261), supra.. This is the rule in many other states. 33 Corpus Juris 225; 41 Corpus Juris, p. 473, "e" under section 386. When a loan is made which is evidenced by a promissory note and secured by a mortgage, the parties have a right to contract in reference to the rate of interest. Everywhere it is realized that a note not in default is more desirable than a note in default. It is well known that a note not in default can be financed at a lower rate of interest than the rate at which a note can be financed when the same is in default. So the lender and the borrower, in contemplation of this fact, when the note is made, provide for the contingency. By so doing the borrower and lender simply agree, consistent with business principles, that, when the note is not in default, it shall bear the interest rate applicable to that situation, and they agree that, when the same is in default, it shall bear the added interest rate consistent with business principles relating to that event. Section 9404 of the 1931 Code provides:

"The rate of interest shall be six cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest not exceeding eight cents on the hundred by the year: 1. Money due by express contract. 2. Money after the same becomes due. 3. Money loaned. * * * "

In the case at bar, therefore, the appellant and the appellee, when making their contract, kept within the lawful rate of interest provided by that section of the Code. A limited phase of the question here involved was before this court in Whitney v. Krasne (209 Iowa 236), supra, local citation 249. There we said:

"Therefore, under the acceleration clause, appellants had a right to commence foreclosure, and, at their option, declare the entire amount due and thereby automatically set into operation the 8 per cent provision of the mortgage."

Under the circumstances, therefore, the appellee was entitled to 8 per cent interest on all sums due by the terms of the note and mortgage. Likewise, it is entitled to 8 per cent after acceleration for that portion of the obligation coming due because of the appellee's election to accelerate and its acceleration of the due date on such indebtedness.

This acceleration was accomplished by the commencement of the suit, which, according to the record and the findings of the district court, was October 28, 1932. But the district court allowed interest on the entire sum from August 1, 1932. That, the district court should not have done. As before indicated, the district court should have allowed the appellee 8 per cent interest from the due date of all sums past due, by the terms of the note and mortgage. Nevertheless, the larger portion of the amount due under the note and mortgage did not become past due except through the acceleration. Consequently, applying the provisions of the note above quoted to the accelerated portion of the debt, it is apparent that the 8 per cent interest should be allowed from the time of the acceleration, which becomes the due date thereon. According to the note, the 8 per cent interest is to be from "the due date to date of payment." Hence the due date of the accelerated part of the debt becomes the acceleration date. The 8 per cent interest, then, should be allowed from that date, which was October 28, 1932, rather than from August 1st preceding. To the extent of the wrongful allowance of interest, the judgment of the district court should be modified.

III. It is claimed by the appellant that the district court wrongfully allowed attorney fees on the accelerated portion of the debt. The note and mortgage provided for attorney fees in the case of suit brought to collect the obligation. Section 11644 of the 1931 Code provides:

"When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as a part of the costs:

"1. On the first two hundred dollars or fraction thereof recovered, ten per cent.

"2. On the excess of two hundred to five hundred dollars, five per cent.

"3. On the excess of five hundred to one thousand dollars, three per cent, and

"4. On all sums in excess of one thousand dollars, one per cent."

Supplemental to that section of the Code, and in explanation and aid thereof, is section 11647 of the same Code, which reads:

"No such attorney fee shall be taxed if the defendant is a resident of the county and the action is not aided by an attachment, unless it shall be made to appear that such defendant had information of and a reasonable opportunity to pay the debt before action was brought. This provision, however, shall not apply to contracts made payable by their terms at a particular place, the maker of which has not tendered the sum due at the place named in the contract."

Myron E. Wilmarth, the appellant, is a resident and practicing attorney in Adams county, where the suit was brought. So it is argued by the appellant that he did not know that the appellee was going to accelerate the due date on a large portion of the mortgage indebtedness, and therefore the attorney fees cannot be collected on the accelerated debt. Nevertheless, it is contended by the appellee that because the note was payable at its office in Omaha, Neb., it is entitled to the attorney fees. These fees were allowed by the district court.

This issue relating to the attorney fees was raised by the pleadings. Consequently, it is an issue in the case. Under division IV of his answer, the appellant specifically pleaded his defense to the appellee's claim for the attorney fees. Manifestly it is not enough for the appellee to merely show that the note is payable at Omaha, Nebraska, in order to collect the attorney fees. In addition to that, the appellee must show that the appellant "had information and a reasonable opportunity to pay the debt before the action was brought." Moore v. Crandall (146 Iowa 25), supra; Fellers v. Sanders, 202 Iowa 503, 210 N. W. 530. Concerning the allowance of attorney fees under the statute above quoted, we said in Moore v. Crandall, supra, reading on pages 31 and 32:

"The manifest design of this statute (section 11647, 1931 Code) is that as a condition precedent to the taxation of attorney's fees a debtor must be afforded a reasonable opportunity to discharge his debt. But for the last sentence (the one providing for the contingency of payment at a definite place), it could not well be claimed

that attorney's fees should be taxed. That, however, forms no exception to the rule of the first sentence, for, when the instrument names the place of payment, the maker ordinarily is afforded a reasonable opportunity to pay before maturity. In neither situation, however, is there such opportunity where the indebtedness becomes due on the election of the obligee by bringing suit. In such event, tender when due would be practically impossible. The evident purpose of the last sentence is to obviate the necessity of a demand at maturity when the place of payment is specified, but has no application to a situation where the debt only becomes due on election unless the maker is advised thereof long enough before suit brought to afford a reasonable opportunity to pay."

Wherefore, in the case at bar, it was necessary for the appellee to notify the appellant of its intention to accelerate the due date as a basis for the collection of the attorney fees only. As before said, in another division of this opinion, notice of such intention to accelerate the due date was not necessary so far as the acceleration itself is concerned; but, in view of section 11647 of the 1931 Code, relating to attorney fees, such reasonable notice of intention to accelerate was essential before attorney fees can be collected on the accelerated debt. The suggestion is made in Kelso v. Fitzgerald, 67 Iowa 266, 25 N. W. 157, and Fellers v. Sanders, supra, that the proper procedure is to try out the main issues of the case first, and then, if there is liability on the note or contract, the contest relating to the attorney fees can be tried and decided. That, however, was not the procedure adopted in the case at bar. Here the issues relating to the attorney fees were raised in the pleadings, as before indicated, and, in order to recover such fees, it is necessary for the appellee to show its right thereto. This is not a case where the evidence upon the subject is omitted from the abstract and where we may therefore indulge in the presumption that the evidence was sufficient to allow attorney fees. Fellers v. Sanders, supra; Kelso v. Fitzgerald, supra.

We have before us a case where the issue relating to the attorney fees was raised in the pleadings, as previously said. Evidence was introduced concerning the same, and now appears in the abstract. Under the pleadings and the record, it is manifest that the appellee has not shown itself entitled to recover attorney fees from the appellant on the accelerated portion of the debt, because it does not appear that the appellant "had information and a reasonable

opportunity to pay the debt before such action was brought". Of course, the appellee is entitled to attorney fees on that portion of the debt which matured without the acceleration. Hence, to the extent that the district court allowed attorney fees on the accelerated portion of the debt, the judgment must be modified.

IV. Our attention now will be directed to that phase of the appellant's argument wherein he suggests that, because of the panic overspreading the country, equity will not foreclose the mortgage and allow the appellee judgment for the full amount of the money loaned. Equity will intervene under the circumstances, it is said by the appellant, because the land has depreciated in value from $40,000, at the time the loan was made, to $10,000 at the time the suit was commenced. Moreover, it is said by the appellant that equity will intervene in his behalf because money now is more valuable than when the loan was made. $20,000, the amount of the loan, would buy on the markets of the country, the appellant insists, at the time the loan was made only as much as $10,000 now will purchase. These radical changes in values were not contemplated, the appellant declares, when the note and mortgage were executed. At this juncture, it is further maintained by the appellant that the appellee has come into equity in this foreclosure proceeding, and therefore must do equity. If equity is done, the appellant concludes, the mortgage either will not be foreclosed, or the judgment will be scaled down to at least $10,000.

Many cases are cited by the appellant. None of them, however, is in point. Great reliance is made by him upon specific performance cases. Manifestly a different situation exists in a specific performance case than that which is present in a foreclosure proceeding.. When, in a specific performance case, the equities do not entitle the plaintiff to a specific performance of the contract, "the practice in such a case, in the absence of statutory provisions to the contrary, is to dismiss the cause and relegate the parties to an action at law." Reiger v. Turley, 151 Iowa 491, 131 N. W. 866; Dunlop v. Wever et al., 209 Iowa 590, local citation, 601-2, 228 N. W. 562, 567. Even in the specific performance cases mentioned, equity did not relieve the party obligated, but rather relegated him to law. The appellant also cites King v. Raab et al., 123 Iowa 632, 99 N. W. 306, as authority for his proposition. A careful reading of that case, however, clearly indicates that it does not support the

appellant's proposition. For instance, on page 634 of the opinion it is said:

"The adequacy of the price when the lease was executed is not questioned. And the authorities cited by both parties are to the effect that any *change in the value of the property* or the price occurring subsequently without fault of either party will excuse neither from compliance with the contract." (Italics supplied.)

Applying that philosophy to the case at bar, it is manifest that the appellant will be hindered rather than assisted in his argument. There is no question but that the transaction involving the note and mortgage was fair and lawful at the time the note and mortgage were executed. Neither the appellant nor the appellee is responsible for the panic which has overtaken the country, and the resulting fall in prices. Under this situation, therefore, the rule announced in King v. Raab, supra, would not relieve the appellant in the case at bar from the payment of the note and the satisfaction of the mortgage. Assuming, for the purposes of discussion, that the appellant's philosophy is correct, then, were the situation reversed, would the appellant, in what he would term prosperous times, be in court asking that he not be permitted to pay $20,000 in satisfaction of the obligation, but that he be required to pay $40,000 in satisfaction of the debt? Of course, that philosophy cannot be applied to the practical events of life.

According to the note, the appellant was to pay the appellee $20,000 on an amortized plan. Therefore the $20,000 is to be paid according to the terms of the contract. Such payment may be made by the appellant in any legal tender authorized by the Congress of the United States. So far as shown by the record, this is a private debt and can be paid only in legal tender of the United States. In section 8, article I, of the Constitution of the United States, it is provided, among other things, that the Congress of the United States shall have power: " * * * To coin Money, regulate the Value thereof, and of foreign Coin. * * * " Congress, and not the state, has the power, under our constitutional system, to determine with what money private debts shall be paid. Knox v. Lee and Parker v. Davis (Legal Tender Cases), 79 U. S. (12 Wall.) 457, 20 L. Ed. 287, local citation 310, 311, and 312; Juilliard v. Greenman, 110 U. S. 421, 4 S. Ct. 122, 28 L. Ed. 204; Warnibold v. Schlicting, 16 Iowa 243; Richmond v. Dubuque & Sioux City Railway Co., 33 Iowa 422. Like-

wise Congress may restrain the circulation of any money not authorized under its own authority. Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 533, 19 L. Ed. 482.

When contracting in the case at bar, the appellant and the appellee did not provide that the debt created could be satisfied by adjusted dollars, trade dollars, or any other dollar, except the legal tender authorized by the Congress of the United States. For instance, we said in Warnibold v. Schlicting, supra, reading on page 247:

"But he (the debtor, who borrows money) can only repay it (the money) by offering that which the law says is a legal tender. * * * Complainant's obligation was to pay so many dollars ($700) and not a commodity, or so much gold. * * * The parties dealt with it (gold money) as having an artificial value, as so many dollars, and not as a commodity having a specified and agreed intrinsic worth or value. Legally, each dollar passed for one hundred cents; and legally, it had no other value. * * * " Continuing on page 248, we further said: "The market fluctuations in the values of these several mediums cannot affect the duty of the creditor to receive, and the right of the debtor to pay, whichever of such mediums the latter may choose to offer."

The appellant, when receiving the money named in the note, in effect agreed to repay it at maturity with legal tender authorized by the Congress of the United States. Under all the cases presented for our consideration, it uniformly has been said that fluctuations in values will not relieve the debtor. Equity cannot arbitrarily grant relief in the face of the Constitution of the United States and the laws thereof, to which the state is subject. See cases above cited. Consideration at this place also should be given to the contract clause as well as to the other clauses of the United States Constitution. See section 10, article I, Constitution of the United States. Iowa has enacted no laws to assist the appellant in avoiding the obligations of his contract. Moreover, in view of the contract provision of the Federal Constitution, the state could not in any event adopt a policy which would repudiate debts, destroy contracts, or deny the means to enforce such obligations. Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 255.

While we sympathize with the appellant in his dilemma, yet

he has cited us no law, and we are unable to find any, through which we may grant him the relief which he asks.

 V. But it is claimed by the appellant that Congress has granted to the appellee, and other like institutions, millions of dollars to relieve debtors in situations of this kind. Assuming this contention of the appellant to be true, nevertheless the appellee's governing board has discretion to determine when and how this money shall be used. This court has no power to compel the appellee to loan the appellant money to help him fund his indebtedness. The appellant must make his appeal for such relief to the appellee's governing board. In no event do the state courts have power to compel the appellee to come to the appellant's assistance.

 VI. It is finally argued that the district court wrongfully refused to grant the appellant a continuance of the cause to March 1, 1935, in accordance with chapter 182 of the Acts of the Regular Session of the Forty-fifth General Assembly of Iowa. Section 2 of said chapter 182, among other things, provides:

"In all actions for the foreclosure of real estate mortgages or deeds of trust now pending in which decree has not been entered, and in all actions hereafter commenced for the foreclosure of real estate mortgages or deeds of trust, or on notes secured thereby, in any court of record in the state of Iowa, while this act is in effect, the court, upon application of the owner or owners of such real estate or persons liable on said mortgages or deeds of trust, or notes secured thereby, who are defendants in said cause and not in default for want of pleading or appearance shall, unless *upon hearing on said application good cause is shown to the contrary,* order such cause continued until March 1, 1935, or so long as this act is in effect. * * * "

Continuing with further provisions, the section then provides for the payment of taxes, interest, etc., out of the rentals on the farm during the period of the contemplated continuance. No question is raised in this case concerning the constitutionality of the above-quoted statute now under consideration. Consequently, it is necessary to determine whether, under the record of this case, the district court erred in refusing to grant the continuance asked by the appellant.

According to section 2 of the statute previously quoted, a continuance is not to be granted in all cases. Such continuance shall

be granted unless "good cause is shown" why the continuance should not be granted. The granting of the continuance is to be the rule under the statute, and, if the general rule is not to apply, the mortgagee must show good cause as to why it should not govern. In other words, the question as to whether the mortgagor is to have a continuance is not dependent upon the judgment or discretion of the district court without reference to the purpose of the statute. Under the statute, the mortgagor is to have the continuance unless the mortgagee has shown good cause why he should not have the same. When the question is presented, it, of course, is for the district court guided by the statute to determine whether or not good cause has been shown why the continuance should not be granted. That is the plain provision of the statute. But, when determining what is or is not good cause, the district court must keep in mind the purposes of the statute, together with the fact that under the statute the granting of the continuance is to be the rule. Necessarily, then, the district court has a limited discretion in determining what shall or shall not be good cause for refusing the continuance. As to what may be a good cause in such event is not provided in the statute. So the statute, in effect, contemplates that the district court, in harmony with the purposes and provisions of the act, shall determine what shall be such good cause, and, if that court does not abuse its limited discretion in that event, this court will not interfere.

While the appellant himself occupied the mortgaged farm originally, yet during the year 1932, when he was defaulting under the mortgage, he left the premises. Apparently the appellant permitted his son to lease the farm in small fractions to various tenants. These tenants appear not to have been good farmers. The buildings are leased by themselves to a single tenant who does not farm but a small portion of the land, if any. It seems that the appellant does not know the name of this tenant. During the time in which the appellant has been in default under this mortgage, he has not applied the rents and profits to the taxes, interest, and principal. In fact, he is attempting to assist his son, the said Harry Wilmarth, in obtaining the rents for the year 1932 in order that the appellee may not receive them.

A concession was made that the appellant is insolvent. Although this is not controlling, yet it has a bearing on the problem. There is approximately $25,000 now due on the indebtedness. Under no circumstances is it possible that the appellant will be able to pay

the debt, with the rapidly accruing interest, on or before March 1, 1935. This mortgaged farm is estimated by the witnesses to be worth approximately $10,000 at this time. Although the appellant is a practicing attorney, there is nothing to show that his legal practice is such that he can liquidate the balance of this indebtedness within the period for which the continuance is asked. It was found by the district court that the appellant has lost hope and apparently, in effect, has abandoned the farm.

The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period. But the appellant, as already indicated, will not be in a position to pay the obligation and redeem the farm within the period of the moratorium. He is hopelessly involved financially. Not only is the appellant insolvent, but he has no property with which to make any payment on the judgment aside from the mortgaged land. While the insolvency is not the deciding point, it is a material consideration. Clearly the appellant has no prospect of refinancing or funding the indebtedness within the moratorium period.

Then, under all the circumstances, it is apparent that the district court did not abuse its limited discretion under the statute, in refusing to grant the continuance.

Wherefore, the judgment and decree of the district court should be modified in the manner and way hereinbefore provided, and, as thus modified, the same should be affirmed. Accordingly, the judgment and decree of the district court is modified and affirmed.—Modified and affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, and DONEGAN, JJ., concur.

MITCHELL and KINTZINGER, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the sixth division of the majority's opinion, and therefore respectfully dissent.

The record in this case shows that a foreclosure action was commenced by filing a petition on the 28th day of October, 1932; that to the petition thus filed the defendants filed answer on the 12th day of January, 1933. An amendment to the petition was filed on the 25th day of March, 1933, and a substituted and amended answer

was filed on the 25th day of March, 1933. This cause came on for trial, and the decree was entered on the 25th day of March, 1933. It is important that these dates be kept in mind.

The appellants filed an application asking that the court continue the cause to March 1, 1935, in accordance with chapter 182 of the Acts of the Regular Session of the 45th General Assembly of Iowa, section 2 of said act being set out in the majority's opinion. No question is raised in this case as to the constitutionality of the above mentioned statute now under consideration.

In the majority opinion they say:

"According to section 2 of the statute previously quoted, a continuance is not to be granted in all cases. Such continuance shall be granted unless 'good cause is shown' why the continuance should not be granted. The granting of the continuance is to be the rule under the statute, and, if the general rule is not to apply, the mortgagee must show good cause as to why it should not govern. In other words, the questions as to whether the mortgagor is to have a continuance is not dependent upon the judgment or discretion of the district court without reference to the purpose of the statute. Under the statute, the mortgagor is to have the continuance unless the mortgagee has shown good cause why he should not have the same."

Thus the majority concede the rule is that the continuance shall be granted and that it rests upon the mortgagee to show there is good cause for not granting the continuance.

Now, let us see what the majority believe to be the showing in this record by the mortgagee that there is good cause for not granting the continuance. It is based upon three propositions: First, that the mortgagor is insolvent; second, that since the default the mortgagor has not applied the rents and profits to the payment of taxes, interest, and principal; and, last, which seems to be the main ground, the majority say that there is approximately $25,000 now due on the indebtedness and under no circumstances is it possible that the appellant will be able to pay the debt, with the rapidly accruing interest, on or before March 1, 1935.

Let us consider the three propositions which the majority rely upon, as shown by this record.

First, the question of insolvency. It must be kept in mind that this cause was tried in March of 1933. It was tried when all of the banks in the land were closed under a proclamation of the Presi-

dent of the United States. It was tried when the price of farm products was at the lowest level in the history of the country. It was tried when there was no money to buy real estate or to make loans upon real estate. It was tried before Congress had passed the Farm Mortgage bill for the refinancing of farm mortgages. The proof of insolvency in this case is based upon the fact that in March of 1933, under the economic conditions then existing, of which this court must take judicial notice, upon the testimony of three witnesses— two of them employees of the appellee bank and the other an auctioneer—who, in testifying as to the value of this farm, said: "As to market value, the economic conditions must be considered," and then placed a value upon this farm of $10,000, the mortgagor was held to be insolvent. It must also be kept in mind that in 1924, some four years after the boom and when farming conditions were not the best, the Federal Land Bank, appellee in this case, an agency of the government, loaned to these appellants upon the same land the sum of $20,000. The land, in order that the Federal Land Bank might make this loan, had to be of the value of $40,000, and this was the value that the appellee bank placed upon the said land in 1924, for it loaned $20,000, and now, nine years later, after the record shows improvements had been made on the land, the Federal Land Bank comes in and says to this court, "This land is worth only $10,000." But let us assume that the appellant was insolvent. This, in my judgment, is not good cause why the continuance should not be granted. Certainly the legislature never had any such idea in mind, and to say that because a man is insolvent a continuance should not be granted would destroy the purpose for which the legislature passed the statute authorizing the continuance of foreclosure actions.

The second proposition relied upon by the majority is that part of the rents and profits were not used in the payment of taxes, interest, and principal. To me this is not a ground for failure to grant the continuance. It is, in my judgment, not a showing of good cause why the continuance should not be granted. But, in the case at bar, we are not confronted with this question, because the mortgagor tendered in his answer and in open court to turn over to the mortgagee all of the rents and profits received from this farm from the date of the first default upon the mortgage. He offered to do equity, and in the face of such an offer certainly no court of equity

can say that that was good cause for refusing to grant the continuance.

Finally, we come to the last, and as I see it in the judgment of the majority the most important, reason for failure to grant the continuance. The majority say in their opinion that there is approximately $25,000 now due on the indebtedness. The decree which was entered in this cause shows there was only $20,189.55 with interest from August 1, 1932, and the costs of this action due at the time the decree was entered. Then, the majority say, "under no circumstances is it possible that the appellant will be able to pay the debt, with the rapidly accruing interest, on or before March 1, 1935." I can find nothing in the record that justifies any such conclusion. Since the decree in this case was entered in the lower court in March of 1933, Congress has passed what is known generally as the Farm Mortgage Bill. It was passed in May of 1933. Under that bill the Federal Land Banks are furnished money for the purpose of trying to save the farms of such people as the appellant in this case. Under the acts of Congress there is what is known as a fund appropriated by the government for additional loans to be made upon real estate. They are known as "Commissioner" loans. The Federal Land Bank in this case could make a loan upon the land, and then, in addition to that, the appellant can secure a second mortgage loan from the government known as a "Commissioner's" loan. These new measures passed by Congress have changed entirely the possibility of refinancing of farms in this state of ours, and this court must take judicial notice of the acts passed by Congress. To say that this farm cannot be refinanced because in March of 1933, when this decree was entered, things looked as though it could not be refinanced, is, in my judgment, not justified by the record or by what has happened since that time. In March of 1933 the prices of farm products were at their lowest level. There has been a marked improvement in the price of farm products. With the advance in farm products there has been a marked advance in real estate, and this court has no right to shut its eyes to the conditions which now prevail, and come to the conclusion that this appellant will not be able to refinance this farm by March 1, 1935. Assuming, for the sake of argument, that there is a showing in this record that the appellant would not be able to refinance his farm, I do not believe that such a showing would be good cause why the continuance should not be granted. The legislature passed the act for the purpose of assisting the people

of this state, and it must be kept in mind that the mortgagee loses nothing, for, under the act, a receiver is appointed to collect the rents and profits from the real estate. It is of vital public concern to the people of Iowa that the men and women in all parts of the state who, through their own efforts, have secured for themselves and their families a farm or home, be not ousted from their farms or their homes, but that they be given an opportunity with the aid of their government to refinance their farm mortgages. The continuance statute is limited in time. It continues the case only to March 1, 1935, which is a matter of only a little over a year. It provides the machinery for the collection of the income and rentals from said land during the period of continuance provided by the statute, and that said income and rentals shall be disbursed under order of the court, thus protecting the mortgagee.

The appellee in this case has failed to show good cause why the continuance should not be granted, and the lower court erred in so holding. I would reverse the case and remand it to the lower court with instructions to continue the case in accordance with the statute.