FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellee, v. J. L. WYLIE et al., Appellants.

No. 43132.

FEBRUARY 18, 1936.

R. J. Smith, for appellants.

McNeil & Scovel, for appellee.

HAMILTON, J.—The real estate involved in this litigation is a badly run-down farm of 160 acres situated in Poweshiek County, Iowa, which, at the time this case was tried in the court below, was owned as follows: 25 per cent by the defendant, J. L. Wylie; 25 per cent by the Citizens Savings Bank of Gilman, Iowa, of which J. L. Wylie was president; 3 per cent by Ida E. Scurr; and 45.5 per cent by certain persons as trustees for Poweshiek County National Bank and for the stockholders of Citizens National Bank, which last-named bank was closed and in receivership. That portion thereof held by the trustees was held along with numerous other assets. The Gilman bank was a going institution, unrestricted, with ample assets. J. L. Wylie was also the owner of other property, including another good farm. Ida Scurr also owned another farm and had money and other property. The real estate in question had been for several years managed and rented by said Wylie, who at one time owned this farm, and who, together with his wife in 1926, executed the note and mortgage upon which suit is brought. It appears from the evidence that this farm has been practically abandoned by the owners for the past two or three years. None of them knew the name of the tenant occupying the premises, and some of the owners had never seen the farm, and some of them did not even know about the application for continuance until they were called as witnesses at the trial. The evidence conclusively shows that the improvements on the farm are in a very bad state of repair, and the soil terribly infested with cockleburs and very badly run down, and that it was rented for the year ending March 1, 1935, for $2 per acre. Up to the year 1932 these various owners had been advancing some money to protect the farm, but since that time they have all apparently felt that there was no equity in the farm and no

prospect of getting anything out of it above the indebtedness, and every one ceased advancing further funds.

It is conceded that the taxes for the years 1931, 1932, 1933, and 1934, aggregating $747.66, are not paid, and that the land was offered for sale at scavenger tax sale January 7, 1935, and there were no bids received at said sale; that an amortization payment of $406.25 became due on September 1, 1932, and others on March 1, 1933, September 1, 1933, March 1, 1934, September 1, 1934; that the amount due the plaintiff on the mortgage indebtedness is $12,206.73, with interest at the rate of 8 per cent per annum from September 1, 1932; that the insurance on the buildings expired June 19, 1934, and the plaintiff was forced to procure a policy at an expense of $44.29 to protect its loan; that the reasonable market value of the farm is from $30 to $40 per acre, which is less than half of the total accumulated indebtedness against the same; that for more than a year an application for a federal farm loan had been on file with the Federal Land Bank at Omaha, but no commitment had been made. The evidence discloses that none of the owners or applicants for continuance are now willing, or will ever be willing, to advance any further funds to protect their equity in this farm, unless they are quite sure conditions will improve materially, and would thus warrant the advancement of such cash. Mr. Wylie says that, if and when the conditions would seem to warrant it, he and the bank of which he is president and the trustees would be willing to advance some money. They testify that their purpose in asking for the continuance is the hope that prices of real estate will advance sufficiently to enable them to dispose of the farm at a profit above the indebtedness against it. The trial court in his written findings says: ''It is apparent to the Court that there is no reasonable probability that there will be an increase in the prices of farm lands, or of the rental values sufficient to overcome the obvious deficit that must continue between the rental value and the expense of carrying the farm, and that there is no hope that the parties will be able to refinance or at the end of a two year period be able to redeem this farm from the mortgage indebtedness now existing against it.''

It is manifest from this record that the purpose for which a continuance is sought in this case is for the sole purpose of delaying this foreclosure action until such time as the value

of this farm shall have increased to such an extent as to show a profit to the owners above the indebtedness and until such time the owners show no inclination or disposition to advance a single dollar in the way of taxes or interest, although the evidence discloses that the owners other than the trustees are possessed of means by which, if they were willing to do so, they could in all probability pay up the back interest and taxes and put this loan in good standing. They are unwilling to do this until they are satisfied that they will get their money back. In the meantime, the improvements are decaying and fences are falling down, and the farm has become a veritable hotbed of noxious weeds, until its rental value has been reduced to $2 per acre. The indebtedness has accumulated until it is more than double the value of the farm, with taxes and interest accumulations of more than $1,000 a year to be added thereto. None of the owners live on the property. None of them are giving the farm their personal attention. The fieldman for the plaintiff is the only person who seems to have had personal contact with the tenant.

Manifestly, the moratorium statute was never intended for mere delay or for the purpose of enabling the owners of the real estate to profit by speculation. If applicants demand of the plaintiff that it delay its foreclosure proceeding for such a purpose, they should back up their assumed faith or hope in the prospect of the good times that are coming by paying up the back installments and the back taxes, and place this loan in good standing. Anything short of this, under the facts in this case, would be unjust and inequitable as against the plaintiff. 25 per cent of this farm is owned by the Citizens Savings Bank of Gilman, Iowa, and Mr. Wylie, as president of the bank, testified: ''Our bank is open without restrictions. It has cash in it and funds of its own. Our bank has a surplus and undivided profits, and our bank has not out of its own assets advanced anything to protect this farm.'' Ida Scurr, who owns 3 per cent of the farm, said: ''I have monies and property beside my interest in this farm. I have a farm. I have not put up any money to protect this farm in the past two or three years.''

This matter is in equity. He who seeks equity must do equity. The mortgagee is entitled to some consideration in a court of equity. Surely the court was right in refusing a con-

tinuance under the showing made in this case. Appellants' contention that the issue was not raised by the pleadings is not tenable. In the resistance the plaintiff challenged the constitutionality of Senate File No. 34 of the Acts of the 46th General Assembly (chapter 115), being the moratorium act, under which the continuance was applied for, but we find it unnecessary to pass on this question. The order of the court denying the application for continuance should be, and is, affirmed.—Affirmed.

DONEGAN, C. J., and PARSONS, MITCHELL, RICHARDS, ANDERSON, ALBERT, and KINTZINGER, JJ., concur.