FIRST TRUST JOINT STOCK LAND BANK of Chicago, Appellant, v. HENRY RUNDE et al., Appellees.

No. 43370.

JUNE 19, 1936.

Elwood, Lyons & Elwood, for appellant.

Wm. H. Salisbury, for appellees.

MITCHELL, J.—On the 15th day of April, 1933, the First Trust Joint Stock Land Bank of Chicago filed its petition in the Mitchell county district court, praying for judgment on a $3,500 note signed by Henry Runde and Rose A. Runde, asking for foreclosure of a mortgage upon certain described property, which mortgage was given as security for said note. Within the time prescribed, defendants filed a motion for continuance, asking that the court continue the cause until March 1, 1935, as by the statutes of Iowa provided. To this motion there was filed a resistance, and, after a hearing on the 10th day of October, 1933, the court entered an order, continuing said cause as prayed. Thereafter, on the 26th day of February, 1935, Henry Runde and Rose A. Runde filed a second application for continuance, asking and praying that said cause be continued until March 1, 1937. A resistance was filed to this motion and hearing was held, in which evidence was offered, and the court entered an order, continuing said cause as prayed for and providing that the rentals from said land should be paid to the clerk of the district court.

From this order granting the second continuance, plaintiff has appealed.

There is no dispute in regard to the facts in this case. The evidence was given by Henry Runde, one of the signers of the note and mortgage and the owner of the land, defendant in the

court below and appellee in this court. He testified that he borrowed from the First Trust Joint Stock Land Bank the sum of $3,500 on the 19th day of February, 1925; that the note was signed by himself and his wife, Rose A. Runde, and that as security for said note he and his wife made, executed, and delivered a certain mortgage, which was duly recorded in the office of the county recorder of Mitchell county on the 26th day of February, 1935.

This mortgage covered 59 and a fraction acres of land. There are no buildings on the farm. A branch of the Wapsie river runs through the land. There are gulleys in several places, and the soil is sandy. The income from the land for the year 1933 was $129.87; the taxes were $129.04. The total rental for 1934 amounted to $103. In other words, the rentals are scarcely more than sufficient to pay taxes, without reference to upkeep or interest on the mortgage. The mortgage debt continues to grow and accumulate.

Runde testified as follows:

"Q. Is the land worth the amount of the mortgage? A. No.

"Q. Would you re-finance this land at that money? A. No.

"Q. Could you re-finance it? A. No. * * *

"Q. If you could get the money, would you re-finance it at the amount of money against it? A. No."

He then testified that in his judgment the land was worth about $15 per acre.

This is the state of facts that confront us in this case.

In the case of Federal Land Bank v. Wilmarth, 218 Iowa 339, 354, 252 N. W. 507, 514, 94 A. L. R. 1338, this court said:

"The purpose of the statute is to afford the owner of the land an opportunity to re-finance or pay up the indebtedness and save his farm within the moratorium period."

And in the case of First Trust Joint Stock Land Bank v. Wylie, 221 Iowa 27, 30, 265 N. W. 181, 183, we said:

"Manifestly, the moratorium statute was never intended for mere delay or for the purpose of enabling the owners of the real estate to profit by speculation."

And in the case of Reed v. Snow, 218 Iowa 1165, 1168, 254 N. W. 800, 801, the court said:

"We think the purpose of the statute was for the relief of debtors who were in financial distress and where there was a possibility of their being able to save their property within the time provided by the statute. However, the purpose and intent of this act, as we view it, was not to give this relief to those owners of property who are hopelessly insolvent and there could be no possible hope for them in the future. As suggested heretofore, this is not a case of saving a homestead or a home to these parties."

In the case at bar the evidence shows—and it is interesting to note that it is the evidence of the man asking the extension— that the land is only worth a small fraction of the mortgage being foreclosed; that the income is hardly sufficient to pay taxes; that he is insolvent. He testified that, if he could get the money, he would not re-finance the loan.

Thus we find that the only purpose of granting a continuance would be to permit the appellee to use the property at the expense of the appellant, with no hope of repossessing the same or paying the mortgage debt. Not only is there no hope, but there is no desire on the part of appellee, for in his judgment the land is not worth the amount of the indebtedness.

Reading this record, we are convinced that appellee's judgment is correct as far as the value of the land is concerned.

It therefore follows that the motion for continuance should have been denied and the lower court erred in sustaining it. Judgment and decree of the lower court must be, and it is hereby, reversed.

Chief Justice and all Justices concur.