SERVICE LIFE INSURANCE COMPANY, Plaintiff, Appellee, v. GEORGE SUTTON et al., Defendants, Elmer Myhre and FARMERS SAVINGS BANK, Defendants, Appellants.

No. 44006.

1014

Hallagan, Fountain, Stewart & Cless, for appellants.

Cosson, Stevens & Cosson, for appellee.

HAMILTON, J.—The incumbered real estate involved in this litigation consists of about 155 acres of land, situated four miles east of the town of Ankeny, Polk County, Iowa. In the year 1925, when the mortgage now held by plaintiff was executed, this farm belonged to the defendants, George E. and Maudie Sutton. The loan was for $14,000, bearing 5½% interest payable semiannually, maturing in five years, principal and interest in arrears to draw 8 per cent. This indebtedness has grown until it now exceeds the sum of $19,000. The Suttons also became heavily indebted to the Farmers Savings Bank of Ankeny, Iowa, and in 1928 they gave the bank a second mortgage on this farm for $10,200, which has also increased by interest accumulations to $13,565.35. Sutton's indebtedness to the bank was a source of financial grief, and when the first mortgage fell due, Myhre, the cashier of the bank, took title to this real estate in his own name, and to stave off foreclosure of the first mortgage, on or about September 29, 1930, he executed an extension agreement, whereby the due date was extended to September 1, 1935, and whereby he became personally liable for the payment of this indebtedness. The next day after this extension agreement was executed, Myhre deeded the farm to the defendant bank, which has ever since held the legal title thereto. Interest payments and taxes were kept up by the bank until the September 1, 1933, installment. Only $150 was paid on this semiannual installment, the installment being $385, and nothing has been paid on interest since. The bank went under Senate File No. 111 and later reorganized, trusteeing a portion of the assets. The land was allowed to go to tax sale, and on February 18, 1937, plaintiff was com-

pelled to pay $318.80 to redeem the premises from said tax sale, and to pay the current taxes in order to protect its mortgage lien. On February 14, 1936, this suit was started. Myhre and the bank filed an application for a continuance under the former moratorium statute, to which resistance was filed, but no hearing was had. The matter rested in abeyance. After the new moratorium statute was enacted, they filed another application for continuance, and to this resistance was also filed. The matter was set down for hearing, and evidence introduced, and after due consideration the application was denied, and it is from this order denying the continuance that Myhre and the bank have appealed to this court, urging that the trial court abused his limited discretion in refusing to grant the continuance.

The trial court in his findings in the order overruling defendants' application made the following statement, which we think is fully borne out by the record: "Upon consideration of the issues thus submitted, the court finds and adjudges that the equities are with the plaintiff; that the persons personally liable on said mortgage are either nonresidents of Iowa or insolvent and unable and unwilling to pay said mortgage either now or at any time prior to March 1, 1939; that the beneficial interest of ownership in this land held by defendant Farmers Savings Bank has become part of the segregated assets of said bank set aside to pay depositors who are the holders of certain depositors' trust certificates and that defendant Farmers Savings Bank is not personally liable to plaintiff on this mortgage and has no intention to pay said mortgage either now or at any time prior to March 1, 1939; that the value of said land constitutes inadequate security for plaintiff's mortgage; and that plaintiff having shown the above has shown good cause under the statutes of Iowa why this cause should not be continued under either of said moratorium statutes."

Insofar as Myhre is concerned, the record shows that he took title as a mere matter of expediency on the part of the bank of which he was cashier. In reality, he had no personal interest in this land. He voluntarily assumed a personal liability which was no doubt done in order to get an extension of the indebtedness, and immediately thereafter he transferred the title to the real owner, the defendant bank. In substance he says in his testimony that he never considered it his debt, never expected to pay it, and in fact will never be able to pay it. That if the plain-

tiff's mortgage is foreclosed and a deficiency judgment entered against him, it will greatly embarass him in his business, and it might result in wrecking his business, and he urges this as an excuse for asking for the granting of the continuance in the hope that the land constituting the security for plaintiff's mortgage might possibly increase in value sufficient to enable the security to fully pay the debt, and thus avoid a personal judgment against himself. Insofar as the the defendant bank is concerned, it has no personal interest in this matter at all. Under its new organization, the deed which it holds to this farm constitutes no part of the assets of the bank. In the reorganization of the bank this item which it had been carrying on its books at $13,565.35 became one of the trusteed assets, and any amount realized from a sale of this farm over and above plaintiff's mortgage indebtedness, interest and costs and taxes paid, etc., would go to the holders of the trust certificates. The holders of these trust certificates are, of course, not personally liable for any part of the indebtedness due the plaintiff under its mortgage. The Suttons are no longer interested in the matter, and made no appearance; presumably they are no longer residents of this state, or are hopelessly insolvent, and are making no effort to avoid the foreclosure of this mortgage. Appellants do not contend that there is any possibility of refinancing by obtaining another loan and paying off the plaintiff's mortgage within the period of the moratorium. Mr. Vorse, president of the bank, as a witness for the defendants, said they could probably float a loan of from $7,500 to $8,000 upon this farm at the present time. He estimated that it might be sold for $80 an acre, but was doubtful whether it could be turned at $90. There was other evidence to the effect that the farm was really worth $125 an acre, but no one testified that it could be sold on the market at that price. Plaintiff's indebtedness at the time of the trial below was about $19,000, and according to the contract it is bearing 8% interest payable annually.

In Federal Land Bank v. Wilmarth, 218 Iowa 339, 354, 252 N. W. 507, 514, 94 A. L. R. 1338, in speaking of the purpose of the moratorium statute, this court said:

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period."

And again, in First Trust Joint Stock Land Bank v. Wylie, 221 Iowa 27, 265 N. W. 181, 183, in speaking of the purpose of the moratorium act, we said:

"Manifestly, the moratorium statute was never intended for mere delay or for the purpose of enabling the owners of the real estate to profit by speculation."

The statute specifically provides that the application for continuance must be made in good faith. This is but the announcement of a principle inherent in proceedings before a court of equity. No one seeking a continuance of this cause and no one beneficially interested in such continuance even pretends that he is obligated or is willing to obligate himself to turn his hand over or make the slightest effort toward paying the indebtedness due the plaintiff under its mortgage. Neither are they interested in the ownership or possession of said land, except as a mere matter of speculation. Insofar as any supposed or presumed equity in the land is concerned, the conflict in weighing the equities is not between the owner and the mortgagee, but between the mortgagee and the depositors holding trust certificates against the trusteed assets. So that that phase of the moratorium statute which has for its purpose the retention of the title, ownership and possession in the hands of those who are interested in holding the possession of the farm as a home or as a distinct, independent enterprise, upon which the welfare of the entire country so largely depends, is not involved in this application at all. Under the facts in this case, there is no such person so interested in this farm in existence.

In reality, this is a contest between creditors, and the court is asked to hold up one creditor on the theory that by so doing, another may possibly be benefited thereby. No one here is even insinuating that he wants to continue to own or hold this farm for the mere sake of owning and possessing it or operating it as an agricultural enterprise. No one is offering or promising that he will do anything on his part except to stand by and abide the passing of time, hoping to profit thereby. If this hope fails of fruition he is no worse off. If the regular and orderly course of commercial affairs among men may be interfered with purely on the pretext of profit to the individuals concerned, then verily the cure would be much worse than the disease. The bank, although it is a going concern and holds the legal title to this farm,

1018

offers to do nothing to keep this farm loan in good standing. The officers of the bank as trustees of the trusteed assets offer to do nothing on their part, but on the contrary set up in this case the ruling of the banking department as an effectual barrier against the bank or the trustees using any of the bank funds or the trusteed assets for the purpose of refinancing this indebtedness. The president of the bank on the witness stand, on behalf of the defendants, when pinned down by the questions propounded to him by the court, freely admitted he was simply trying to make the best bargain he could. He said: "I always try to make the best deal for myself I can."

We are abidingly satisfied under this record that just cause for refusing a continuance was plainly manifest and clearly shown by the evidence, and the trial court was justified in denying a continuance of this case, and the order of the trial court is accordingly affirmed.—Affirmed.

RICHARDS, C. J., and all Justices concur.