PRUDENTIAL INSURANCE COMPANY of America, Appellant, v. JOHN P. CLAASSEN et al., Defendants, JOHN MCCARTHY, Appellee.

No. 42443.

FEBRUARY 13, 1934.

Quintard Joyner, Clinton B. Nasby, and E. A. Norelius, for appellant.

Bennett Cullison, for appellee.

MITCHELL, J.—Some time in April, 1917, John McCarthy, the appellee in this cause, became the owner of the following described real estate:

North fractional half of the Northeast Quarter of Section 1, Township 80, North of Range 39; also the West fractional half of the Southwest Quarter of Section 31, Township 81, North of Range 38, Shelby county, Iowa.

And shortly thereafter obtained a loan of $20,000 from the Prudential Insurance Company of America, secured by a first mortgage upon the above-described real estate. McCarthy defaulted under the terms of the mortgage, and the mortgage was foreclosed, resulting in sale under special execution in May of 1925. In May of 1926 title was conveyed by sheriff's deed to one John P. Claassen, and John P. Claassen in June, 1926, executed and delivered to the Prudential Insurance Company his certain promissory note for $20,000, payable on the 1st day of July, 1936, and secured by a mortgage upon the land formerly owned by McCarthy, the legal description of which is set out in the first part of this opinion. Subsequent to the giving of the note and mortgage by Claassen to the Prudential Insurance Company, the mortgaged premises were conveyed by Claassen to one J. M. Albertsen. It was seven years from the time the Prudential foreclosed its mortgage against McCarthy, to wit, 1925, to the time that it commenced the foreclosure in the present case, to wit, 1932. During those seven years, McCarthy and his brother Tom had leased the farm as tenants. In June of 1932 the Prudential Insurance Company, the appellant in this case, filed its petition in foreclosure against John P. Claassen and his wife, who had made, executed, and delivered the note and mortgage to the said appellant company, and against J. M. Albertsen, the owner, and joined as defendants John McCarthy and Tom McCarthy, alleging in the petition that they were tenants upon said farm and that they claimed some interest in said farm. Notice of the pendency of said suit was duly given the said John McCarthy and Tom McCarthy, as by law prescribed, said service being by personal service in Shelby county, Iowa. Notwithstanding said notice, neither John McCarthy nor Tom McCarthy appeared, and default was entered against them by the court on the 14th day of September, 1932. The court also appointed a receiver to take immediate possession of the real estate, the receiver being one Jake Moore, who qualified by filing bond, and letters of receivership were duly

issued to him. On the 12th day of October, 1932, the premises were duly sold under special execution by the sheriff of said county to the Prudential Insurance Company of America, and sheriff's certificate of purchase duly issued to them. On the 3d day of March, 1933, Jake Moore as receiver filed an action against the defendant John McCarthy, requiring him to show cause why he should not be adjudged guilty of contempt of court in refusing to surrender the mortgaged premises to said receiver at the expiration of the lease which he held from the receiver. The accusation of contempt filed by said receiver alleged that John P. McCarthy leased the premises for the term commencing October 12, 1932, and expiring February 28, 1933, and that he had refused to surrender possession as agreed to in said lease. To said accusation of contempt, defendant-appellee filed a written resistance, in which he alleged that in the year 1924 he had entered into a written contract of purchase of real estate with one John Claassen, and that the said Claassen was acting merely as a representative of the insurance company, and that the insurance company had knowledge of said contract and that no statutory notice of rescission had ever been given said McCarthy. On the 11th day of March, 1933, the court entered an order and judgment in contempt against John McCarthy, ordering that he immediately vacate and surrender possession of said premises to the receiver. A like action was filed against Tom McCarthy and wife, and the said Tom McCarthy filed a resistance on the same grounds as John McCarthy. On March 20, 1933, the court adjudged Tom McCarthy and wife to be in contempt, and they were ordered to give up possession of said premises and to remove therefrom all of their personal property and to turn over possession of the premises to the receiver. After the McCarthys had vacated the premises under the order of court, the premises were leased to one George M. Gelston, and the receiver asked the court to approve said lease. Tom McCarthy filed an application, objecting to the lease to Gelston, asking that the receiver be ordered to lease the premises to him. This application alleged that for many years past the applicant and his brother John McCarthy had operated the real estate as a partnership and under an agreement to purchase the same, and that the Prudential Insurance Company had full knowledge of said agreement. The receiver filed a motion to strike the objections, and the court sustained the motion of the receiver and approved the lease entered into between the receiver and Gelston. On October 6, 1933, shortly

before the period of redemption was to expire, John McCarthy filed an application, alleging that he was the owner of the real estate by virtue of a contract of sale and deed executed between him and the Peters Trust Company, acting for the Prudential Insurance Company; that the said deed and contract were lost; and prayed that the period of redemption be extended in his favor until March 1, 1935. To this the Prudential Insurance Company filed its resistance. The cause was submitted to the court, the lower court holding that the period of redemption should be extended. The Prudential Insurance Company, not being satisfied with the finding of the lower court, has appealed to this court.

There is but one issue in this case, and that is, whether or not John McCarthy is entitled to an extension of the period of redemption. His right to the extension is based upon chapter 179 of the Laws of the 45th General Assembly of the state of Iowa, being known as House File No. 350. The pertinent portion of said act, namely, paragraph 1 of section 1, is as follows:

"Section 1. In any action, for a real estate foreclosure of a mortgage or a deed of trust, which has been commenced in any of the courts, and in which a decree has been or may hereafter be entered, but the redemption period, as now provided, has not expired, upon application of the owner or owners of such real estate, the court shall, unless upon hearing upon said application good cause is shown to the contrary, order that no sheriff's deed shall be issued until March 1, 1935, and in the meantime the such owner or owners may redeem such property, and are entitled to possession thereof."

In the very beginning it should be noted that the constitutionality of this statute is not raised in this case. Under the part of the statute above quoted, it will be noted that the legislature gave only to the owner or owners of real estate the right to apply for an extension. No one other than the owner of the real estate, under the statute, has a right to apply for an extension of the period of redemption. And so, the real question in this case is: "Was John McCarthy the owner of the real estate, so that he would come under the provisions of the act passed by the legislature?" It is not necessary that the owner would have to be vested with the record title or with the title in fee simple, and even a purchaser under a land contract might be an owner, as the word is used in the statute. But, before he would have the right to the extension of the period of re-

demption given to him by the statute, he must be the owner of said real estate. Was John McCarthy the owner, or did he have such an interest in said real estate that by a liberal interpretation of the statute he could be given the right to the extension of the period prescribed by the statute? John McCarthy held no deed to the property; he had no written contract. For a period of years he had leased the premises under a written lease with the then owner of said described premises. If he was the owner or if he claimed to be the owner, would he have entered into a written lease with the title-holder? It does not seem that one who claims to be the owner would be leasing the property from some other party, and yet, that is exactly what McCarthy did. It is true that in the lease dated March 27, 1930, there was contained an option giving the said John McCarthy a right to purchase said land. Said option is as follows:

"It is further agreed that the lessee shall have the right to purchase the property for the sum of $7,023.71, with interest thereon at $5\frac{1}{2}\%$ from June 1, 1930, subject to a mortgage in favor of the Prudential Insurance Company of America for $19,500.00, with interest paid to July 1, 1930; and subject to the second installment of tax for 1929.

"This option expires February 1, 1931; and if not exercised by that time, all rights of purchase terminate without further action of the parties."

John McCarthy testified that he did not carry out the terms of the said option; that he made no payment and did not offer to make any. The lease that was made thereafter, to wit, on August 5, 1931, between the same parties, to wit, Albertsen and John McCarthy, contained no option to purchase and was a straight, out-and-out lease of property for a specified rental. This court has held that one who has a mere option to purchase acquires no right, title, or interest, legal or equitable, in or to the land.

In the case of Gompert v. Frost, 188 Iowa 1039, at page 1042, 177 N. W. 71, 72, it is said:

"An option for the purchase of land is a mere privilege or right which the owner confers upon another person to become at his own election the purchaser of the property on stated terms within a stated period of time. The holder of such an option is in no sense a purchaser. He acquires thereby no right, title, or interest, legal or

equitable, in or to the land. He has no right of possession or control. He may, within the time agreed upon, utilize his privilege to buy, tender performance of the terms, and demand a conveyance; but this is a matter of his own choice, and he may permit the option to expire without incurring any liability therefor to the owner."

Did the McCarthys believe that they had any interest in said land? For a period of seven years they leased this farm; they made no claim during any of that time to being the owners of the land or having any interest in said land. Not until they were ousted from the real estate by an officer of the court, to wit, the receiver who was appointed by the court to take charge of the land, did they make any claim to any ownership or interest in said land. And finally we find that in April of 1932, in response to a letter written to them by the Farm Investment Company, Tom McCarthy wrote the following letter:

"In reply to the above letter, will say that we did not have any lease signed for 1932, but we had an understanding with Mr. Albertsen, that the rent would be the same as in 1931. One half of the grain crop delivered at the market place, and $5.00 an acre for pasture and hay-land.

"We have had a talk with Mr. Albertsen at different times about re-acquiring the land, and as you have the management of it now, we might be interested, if you would make a proposition, as to the price and terms, at which you would dispose of the land."

It is true, of course, that Thomas McCarthy could not bind John McCarthy, but this record shows that they farmed together for a great many years and in all of their transactions they were closely connected. And, at the time of the citation for contempt, Thomas McCarthy claimed also to be an owner of the real estate. And yet, we find him writing, in April of 1932, to the company that had charge of this real estate, saying to them in writing: "We might be interested if you would make a proposition as to the price and terms at which you would dispose of the land."

Finally we come to the fact that John McCarthy, when notice of the foreclosure action was served upon him in the case of the Prudential Insurance Company v. Claassen and Albertsen, in which it was alleged that John McCarthy and his brother Tom were tenants upon the farm and were claiming some interest in said farm,

John McCarthy made no defense in that action. He had his day in court; he had his right to go into court and then and there to claim whatever interest he had in said real estate, if any. He had notice of the claims of the appellant at that time, but he made no claim contrary to the claim of the appellant. A decree of court was entered against him, finding that he had no interest in said real estate, and appointing a receiver to take charge of said real estate. That was an adjudication of John McCarthy's interest in said real estate—an adjudication that he had no interest. He permitted that decree to be entered by default against him after he had been served with an original notice of the very action in which the decree was entered. Clearly, upon the record that is presented to us here, there has been no showing, no evidence of any kind or description, that John McCarthy was the owner of said real estate or had any interest whatever in said real estate. The legislature passed the act extending the period of redemption for the benefit of the owners of real estate. The wisdom and judgment of the legislature in passing such an act cannot be doubted. The legislature saw fit to say that it should only protect the owners. And this court cannot extend the benefit to others than the legislature has prescribed it shall apply. As John McCarthy was not an owner of said real estate, he is not entitled to the benefits of the act. The judgment of the lower court must be, and it is hereby, reversed.

CLAUSSEN, C. J., and EVANS, KINDIG, STEVENS, ANDERSON, and KINTZINGER, JJ., concur.