METROPOLITAN LIFE INSURANCE COMPANY of New York, Appellant, v. ELSIE A. LAUFERSWEILER et al., Defendants; D. W. BATES, Superintendent of Banking, Receiver, Appellee.

No. 43313.

MAY 5, 1936.

Thompson & Weible, and Tinley, Mitchell, Ross & Everest, for appellant.

Breen & Breen, for appellee.

PARSONS, J.—On February 28, 1935, the plaintiff filed a petition for the foreclosure of a mortgage executed by John Laufersweiler March 24, 1924, to secure a note for $15,000 made payable to George A. Rich. The note and mortgage were transferred to the plaintiff shortly after they were made. There was an acceleration clause for failure to pay interest, taxes, and insurance, and at the time of the commencement of the action the claim had grown to $17,576.98.

D. W. Bates, as superintendent of banking, was made a party as receiver of the First State Bank & Trust Company of Fort Dodge, Iowa, and on March 7, 1935, filed an application under the Act S. F. 34, now chapter 115, Acts of the 46th General Assembly said application setting forth that the matter came within the provisions of the act, that he was not in default, and asked a continuance under the provisions of the act, and for orders as to distribution of the rents from the property involved.

The plaintiff filed a resistance to this application, setting forth a denial that Bates as the receiver was the owner of the legal title to the land in the action, and alleging that E. H. Rich, Donald Vincent, and C. W. Gadd were the owners and legal titleholders of the real estate; that said bank and its receiver were beneficiaries only for said trustees for the purpose of securing the indebtedness of the former owner to said parties. The resistance further set forth that, if the applicant was the owner of the real estate, he would not be such owner or legal titleholder as to be entitled to make application for continuance of this action under the act, and that it was neither the intent nor the purpose nor spirit of such legislation, nor of the legislature in passing same, to grant relief by continuance to such owner or owners of the legal title as the applicant; and, third, that the real estate under foreclosure in this action was not the home or homestead of the applicant, and said applicant was not an individual owner or farmer in possession of and farming said land; and, fourth, that the applicant was not an individual in the sense intended by said S. F. 34, but a receiver of a defunct bank, and as such stood only in the position of, and had no greater rights than, said defunct bank; fifth, that the bank and its receiver stood in the position of junior lienholders and/or

creditors of the original owners of said land; sixth, that by the nature of the situation of which the court may take judicial notice, said closed bank and its receiver were insolvent and hopelessly involved financially; that the bank and its receiver had no means or property out of which to pay the indebtedness. sued on and secured by plaintiff's mortgage except the real estate under foreclosure, and no way or means of refinancing or refunding said indebtedness within the period of continuance asked and provided by said legislation; seventh, that the granting of said application would not in any way contribute to the betterment of the financial situation of said closed bank and its receiver, but would work immeasurably to the disadvantage of the plaintiff; and that the injury, damage, and detriment to the plaintiff would far surpass the corresponding benefit to the applicant, if any; and that the equities of the whole situation were with the plaintiff and against the defendant applicant, and it would be inequitable to grant said application.

Such were the issues upon which the matter was tried. The defendant's counsel at the opening of the trial made a statement, which was taken into the record, showing that the First National Bank of Fort Dodge went into voluntary liquidation and was succeeded by the First State Bank & Trust Company, which assumed all of the deposit liability of the national bank, and selected from the assets whatever they thought was good, and the balance of the assets of the national bank were assigned to three trustees, Gadd, Rich, and Vincent, for the purpose of guaranteeing a "gap" note. The "gap" note took up the gap between the deposit liability and the assets the new bank took over, and the assets which the state bank did not elect to take were transferred to these three trustees as collateral security for the "gap" note. Not long thereafter the state bank went into the hands of a receiver, and it became apparent that the "gap" note would have to be paid, and all the assets, including this particular fund that the three trustees held, were transferred to the First State Bank & Trust Company.

The evidence showed that the original maker of the note died some time prior to September, 1931, and Elsie A. Laufersweiler was made executrix of the estate of the deceased, and that, under an order of court entered the 25th day of September, 1931, the executrix was authorized to deed three-fourths of the land involved herein to the First National Bank of Fort Dodge,

Iowa, and did so deed the property to that bank, the deed being executed and acknowledged on the 6th day of October, 1931. The national bank deeded the three-fourths of the land by warranty deed to three trustees, said deed containing the clause: "To HAVE AND TO HOLD the said described real estate to said E. H. Rich, Donald Vincent and C. W. Gadd, the survivor or survivors of them, as trust property and to the uses and upon the trusts and with the powers herein expressed and declared, to-wit: To sell and convey the same and with the full power and authority in said Trustees or the survivor or survivors of them to execute, acknowledge and deliver such deeds and instruments as may be effectual to pass to any grantee the fee simple title thereto; and no purchaser from said Trustee shall be bound, required or concerned in any manner to see to the disposition or application of the purchase money; said Trustees to stand possessed of the purchase money and net proceeds of any sale thereof for the use and benefit of the First State Bank & Trust Company of Fort Dodge, Iowa."

On the 27th day of March, 1934, the said three trustees, Rich, Vincent, and Gadd, deeded by warranty deed to the First State Bank & Trust Company at Fort Dodge an undivided three-fourths interest in the said real estate.

The evidence in the case showed further that D. W. Bates, superintendent of banking, filed a petition in equity in the district court of Webster county, Iowa, alleging, among other things, that the First State Bank & Trust Company was now in an insolvent or unsafe condition; second, that the interests of the creditors required the closing of said bank; third, that said bank was closed voluntarily by the board of directors. The petition further contained paragraph IV:

"Plaintiff avers that even though an assessment of 100% be made upon the capital stock of said bank that such institution would still be in a condition of insolvency or in an unsafe condition and that it would be unsafe for said defendant bank to continue business."

The petition prayed for the appointment of a receiver. An appearance and recommendation for appointment of a receiver was made in that action on behalf of the bank by its officers, and by its board of directors, and consenting to the appointment of a receiver. Bates was accordingly appointed receiver on the

26th day of July, 1934, with all the powers usually given to receivers in such cases.

Such is the record made in the court below. Upon this record the court on the 12th day of April, 1935, entered the order appealed from and granted the continuance to March 1, 1937. From that order the plaintiff appealed to this court.

It will be observed that application in this case is made under the provisions of chapter 115 of the 46th General Assembly, which provides, after declaring the emergencies, an extension of the emergency under chapter 182 of the 45th General Assembly, which was an act allowing the landowner or owners in an action to foreclose a mortgage to secure a continuance of the case to March 1, 1935. In the act of the 45th General Assembly, chapter 182, it was provided in section 2 thereof that the court, upon application of the owner or owners of such real estate, or persons liable on said mortgage, who are defendants in said cause, and not in default for want of pleading or appearance, shall, unless upon hearing on said application good cause is shown to the contrary, order such cause continued until March 1, 1935, or so long as the act was in effect. So under this chapter the only parties who could secure a continuance by reason of the act were the owner or owners of the real estate, or persons liable upon the mortgage.

The statute under which the continuance is asked in this case contains practically the same provisions. It must be upon the application of the owner or owners of such real estate, who are defendants in the cause, and it is to be continued to March 1, 1937, unless good cause is shown to the contrary. So both of these statutes, providing for a continuance of the time for answer and trial of a mortgage foreclosure, provide that the parties entitled thereto must be the same, i. e., the owner or owners, or persons liable under the mortgage. In this case it is claimed that Bates, the appellee, is the owner by reason of being receiver of the First State Bank & Trust Company of Fort Dodge. It is not claimed that he or the bank are liable for the mortgage. It is merely claimed they are owners of the real estate. The record showed that, if they owned any part of the real estate, they owned only three-fourths of it.

In Prudential Ins. Co. v. Kraschel, 222 Iowa . ., 266 N. W. 550, 552, this court, by Judge Albert, discussed the right to continuance under similar statutes and says:

"We have held that it is only the owner who has the right to a continuance under this moratorium statute. * * * It is also apparent from the statute that, where there is more than one 'owner', all such owners must join in the application, because the statute is worded 'owner or owners'."

The reasoning of this case is correct. The maker of the mortgage is dead; the mortgage was upon the whole 240 acres of land; the conveyance from the estate of the maker of the mortgage was for only a three-fourths interest. It leaves a fourth interest in the real estate floating around somewhere; somebody owns it. It certainly is not conveyed to the First National Bank of Fort Dodge; hence that bank never had title, and it could not convey to its trustees any more than it attempted to convey, the three-fourths interest. The trustees conveyed only a three-fourths interest to the First State Bank & Trust Company; hence Bates, as receiver, took only the interest the bank had. To hold otherwise would be to say that if the lawful interest, subject to the mortgage, had been conveyed to twenty people, each having an undivided interest in the land, that each of the persons to whom such conveyances were given could come in and insist upon a continuance of the case to March 1, 1937. We do not believe that the legislature contemplated any such thing. It meant that such would be the rule, that, when it used the words "owner or owners" it meant what it said, *the owner or owners of real estate involved in the mortgage under foreclosure.* Neither was Bates, nor the bank of which he was receiver, liable upon the mortgage, or the note securing the mortgage. Their deeds contained no clause assuming the mortgage, hence all the mortgagee could get under the foreclosure would be a simple cutting off of their rights. We think the Kraschel case lays down the rule that is sufficient answer in this case to the attempt of the receiver to get a moratorium on the foreclosure, and in support of this view we refer to Prudential Ins. Co. v. Claassen, 217 Iowa 1076, 252 N. W. 553; Equitable Life Assur. Soc. v. Kramer, 218 Iowa 80, 253 N. W. 809; Prudential Ins. Co. v. Lininger, 220 Iowa 1212, 263 N. W. 534; Lincoln Joint Stock Land Bank v. Brown, 219 Iowa 630, 258 N. W. 770.

In the Kramer case a junior mortgagee had foreclosed and received sheriff's deed, and it was held he was not entitled to an order extending time to which redemption could be made from a

foreclosure sale under the senior mortgage. Judge Evans, writing the opinion, said:

"The undoubted objective of the legislation is to extend grace to the owner or debtor as between him and his creditor and to protect as far as possible the status quo between the parties and to defer for a brief time the debtor's ejection from the premises." He then calls attention to the fact that the question of the constitutionality of the legislation was not pressed, and that the legislation is taken according to its terms.

The section invoked here by the appellee is the act of the Forty-sixth General Assembly. It will be observed that that can be invoked only by the owner or owners of real estate, with the added clause, "who are defendants in the case." So it becomes necessary to determine whether or not in this case the appellee Bates is such an owner of real estate as is entitled to invoke the provisions of the chapter relied upon. The opinion in the Kramer case goes on to say:

"Clearly there is less reason for granting the application of the defendant than there would have been for the granting of such an application to the debtor as against the defendant under the first execution sale. The debtors did not apply for an extension. They thereby waived whatever right they had. The defendant's theory is that it has succeeded to such right as an assignee. We think not. There was no assignment of it in fact by the debtors. They simply waived it."

Another consideration why the receiver Bates should not be permitted to the delay asked is that these statutes have their justification and the fact that they are made for the purpose of enabling the home owner, or the farm owner who has put his money and good faith into the property, to protect his interests so long as he acts honestly. Statutes of this character have no justification other than for reasons of this kind. In a case decided by this court and filed just one week ago, April 7, 1936, entitled Equitable Life Assurance Society of United States, a Corporation, v. I. N. Kirby et al (A. B. Snyder, Intervener), 221 Iowa 1150, 266 N. W. 520, Snyder and one Winters had been for some time engaged in what is known as "lease scalping"; that is, purchasing mortgaged property for the purpose of leasing the same, assigning the leases, and thereby defeating the

mortgagee in his efforts to recover the rents secondarily pledged as security for the debt. The lower court in that case granted an extension of the period of redemption to March 1, 1937. This court in the opinion just filed reversed the lower court, citing the following authorities: First Trust Joint Stock Land Bank of Chicago v. Wylie, 221 Iowa 27, 265 N. W. 181; Connecticut Life Insurance Co. v. Roth, 218 Iowa 251, 254 N. W. 918; Butenschoen v. Frye, 219 Iowa 570, 258 N. W. 769; Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N. W. 507, 514, 94 A. L. R. 1338.

In the Wilmarth case this court said:

"The purpose of the statute is to afford the owner of the land an opportunity to refinance or pay up the indebtedness and save his farm within the moratorium period"—citing Reed v. Snow, 218 Iowa 1165, 1168, 254 N. W. 800, 801.

In the case of Reed v. Snow the court said: "We think the purpose of the statute was for the relief of debtors who were in financial distress and where there was a possibility of their being able to save their property within the time provided by the statute. However, the purpose and intent of this act, as we view it, was not to give this relief to those owners of property who are hopelessly insolvent and there could be no possible hope for them in the future. As suggested heretofore, this is not a case of saving a homestead or a home to these parties."

The receiver in this case did not get title to any part of these premises until he was appointed July 26, 1934, and then only three-fourths of the real estate, and the bank itself did not get title to this three-fourths under the deed of the trustees until the 27th of March, 1934. It was not the intent of the legislature that these equities of redemption from mortgages be handed from person to person for the purpose of delaying foreclosures, and that they might speculate upon the fancied advancing real estate values or beat the mortgagee out of the rents on the land which were to be applied for the payment of taxes and the diminution of the debts secured by the mortgage.

It is true that the rule is to grant continuances when asked by proper parties. It is also true that the purpose is to give the owner of the land a chance to redeem within the period in which the extension is granted. Also to be taken into consideration is the financial condition of the party making the application. But

1016

in this case the bank for which Bates was acting as receiver was hopelessly insolvent, with a 100 per cent assessment of the stockholders still leaving it in that position. This requires some explanation of how it could be expected that redemption could be made within the period contemplated. None was given whatever. The insolvency is proof, no evidence to the contrary, no funds shown to be in the hands of the bank. We have held in cases cited in this opinion that, where there were two mortgages upon the same tract of land, the second mortgagee could not come in and exercise the right of getting a continuance, which belongs to the owner of the land alone. While Bates as receiver is not a mortgagee, yet he holds his rights, if any, in this three-fourths interest in the land, for the protection of the creditors of the failed bank. In other words, the deed to that bank gave it only the title to a portion of the land, and the Kramer case cited herein we think is determinative of this. So, for all the reasons here pointed out, the action of the lower court is reversed, and it is directed to proceed with the foreclosure of the mortgage.—Reversed.

DONEGAN, C. J., and ALBERT, KINTZINGER, STIGER, and RICHARDS, JJ., concur.