## CHARLESTON.

### E. T. OLIVER v. C. P. STOVALL et al.

Submitted January 31, 1923.   Decided February 6, 1923.

1. MORTGAGES—*Error to Decree Sale of Lands Under Trust Deed Lien, Where Owner of Beneficial Interest Offers to Redeem Without Adjudicating Sum Necessary and Fixing Date of Payment.*

   Where the court has taken jurisdiction of the enforcement of a trust deed ·lien upon land, and the owner of a beneficial interest in the land, who has the right to· redeem ·by paying off and discharging the trust lien debt, and by proper pleading, asks that the amount of the lien be ascertained and avers that he is ready, able and willing to do so when the proper amount is fixed by the court, it is error to decree a sale by the trustee without adjudicating the sum necessary to redeem, and without giving a day for its payment. (p. 94).

2. SAME—*Acceleration of Maturity Clause Held Valid.*

   Generally, a provision in a deed of trust giving the *cestui que trust* the right to declare and treat the entire amount secured as immediately due and payable upon default in the payment of any of the installments or of interest or taxes due, is a valid and enforceable contract, and is enforceable in a proceeding to sell under the terms of the trust. (p. 94).

3. JUDICIAL SALES—*Court Taking Jurisdiction of Administration of Trust to Secure Creditors Should Fix Equitable Liens' in· Favor of Parties Before Sale Decreed.*

   ′ When a court of equity takes jurisdiction of the administration ·of a trust to secure creditors, the claims and priorities of all parties interested should be ascertained and fixed including any equitable liens in favor of any of the parties, before a sale should be decreed, unless good reason be specially shown, in order that all parties may intelligently protect their interests at the sale. (p. 94).

4. MARSHALING ASSETS AND SECURITIES—*Doctrine of Marshaling Held Applicable to Protect Creditors Having Lien Upon One of Two Pieces of Property, Both of Which are About to be Sold by a Prior Lienor.*

   The equitable doctrine that, "If one creditor, by virtue of a lien or interest, can resort to two funds, and another to one

of them only, as, for example, where a mortgagee holds a prior mortgage on two pieces of land, and a subsequent mortgage on but one of the parcels is given to another, the former must seek satisfaction out of that fund which the latter cannot touch," applies for the protection of a creditor who has an equitable lien upon one of two pieces of property both of which are about to be sold by a prior lienor. (p. 94).

(McGINNIS, JUDGE, absent).

Appeal from Circuit Court, Mercer County.

Suit by E. T. Oliver against G. P. Stovall and others. From a decree for defendants, plaintiff appeals.

*Reversed and remanded.*

*Sanders, Crockett & Fox,* for appellant.

*Luther G. Scott, Sexton & Roberts,* and *McClaugherty & Richardson,* for appellees.

LIVELY, JUDGE:

This appeal and supersedeas is prosecuted for the purpose of correcting an alleged error in a decree of the circuit court of Mercer county entered on August 24, 1922, and which directed a sale of the real estate and personal property over which the litigation was pending, directed to the trustee to pay to his *cestui que trust* the amount secured by the trust deed and retain the remainder, if any, for future distribution under the direction of the court; and referred the cause to a commissioner for a report on other matters hereinafter mentioned.

It appears that G. P. Stovall and E. K. Bailey, by deed dated December 22, 1920, conveyed to W. H. Allen, by metes and bounds, a lot of land in the city of Bluefield for a consideration of $8,000, to be paid. Two thousand dollars of the purchase money, as evidenced by a negotiable note, was executed by Allen at four months from date, and the residue of $6,000 was evidenced by interest bearing notes for the sum of $50 each, the first note becoming due and payable one month after the date of the deed, and one note each successive month thereafter, covering a period of 120 months. At

the same time Allen executed a deed of trust to James S. Kahle, a trustee, to secure the payment of the notes above described, in which it was stipulated that the $2,000 note might be renewed by the maker for four successive periods on a curtailment of at least 15% of the face of the note at each renewal. It was also stipulated that if Allen made default in the payment of any one of the notes secured or in the payment of taxes, then, at the option of the holder of the notes, the entire amount, as evidenced thereby, should become due and payable without reference to their due date, and the trustee, upon request to do so, should proceed to execute the trust and sell the property for the debt secured. On the same date Allen executed a deed of trust of Kahle, trustee, conveying to him certain personal property located in the city of Bluefield, therein fully described, and consisting of a dry cleaning system or plant, to secure the payment of the $2,000 purchase money note above described and any renewal thereof. On September 1, 1921, Allen entered into a contract with E. T. Oliver, the plaintiff, by which he leased this lot to him for a term of twelve years in consideration of certain small sums each month as rent and the erection thereon by Oliver at his own cost and expense a two-story brick building; and it was agreed that if Allen should fail to pay off and satisfy any and all liens against the lot he would reimburse Oliver for any loss which he might sustain by reason of such failure. It appears that Oliver erected the two-story brick building on the lot at a cost, as he alleges, of $7,000. In the meantime the $2,000 note, secured by the deed of trust on the lot and on the personal property, had been renewed by Allen, with the consent of Stovall and Bailey, without payment of 15% of the face thereof. All that he had paid on this note was about the sum of $100, and at the expiration of the third renewal the holders refused to give a further extension, declared that all of the notes had become due under the accelerating clause of the trust deed and directed the trustee to advertise and sell the lot. When the lot was advertised Oliver instituted this suit against Stovall, Bailey, Kahle, trustee, and Allen, setting out the above facts, exhibiting

therewith the deed, deeds of trust and his lease contract, and setting up further that he had obtained a judgment against Allen for $300 on the 16th day of December, 1921, on which execution had been returned, "No property found" and which, he charged, was a lien upon the lot advertised for sale; alleged upon information that Allen had defaulted in the payment of the $2,000 note and that the personal property pledged to secure the payment of the same is insufficient to pay off and discharge the note; that by virtue of his judgment and contract he has rights and equities in the property advertised for sale and that Stovall and Bailey should be required to satisfy their claim first out of the personal property on which they had a lien, and that a sale of the lot with his two-story brick house thereon would work grievous and irreparable injury to him and that before a sale under the deed of trust he should have an opportunity to have his rights and interest in the property adjudicated; and he prayed for a reference to ascertain the value of the personal property and to ascertain his rights and equities in the house and lot; that the personal property first be exhausted before proceeding against the real estate and that the trustee be restrained from making a sale until the further order of the court. Defendants, with the exception of Allen, demurred and answered, and upon the hearing of the motion for injunction tendered and paid into court $318.95, the amount of the judgment in favor of Oliver set up in his bill, and thereupon the court refused to grant the injunction. Upon application to the judges of this court, the injunction was awarded. A motion was made to dissolve, on the 12th of June, 1922, when the plaintiff, by amended and supplemented bill, alleged that numerous defaults in the payment of the money secured by the deed of trust had been made by Allen, and no advertisement of the property or claim that all the money represented by the notes had been declared due and payable until after he had erected his building on the lot and that subsequent to the advertisement he had offered to Stovall and Bailey $2,000 and the costs of advertising the property for sale, and all other costs, which they refused to accept,

and averred that he was ready and willing to pay them the total amount which might be due them, together with the costs and expenses incurred by the trustee as soon as the total amount due them by reason of the default of Allen had been determined by the court. It was also alleged that Allen was insolvent, and fraud and collusion was charged between Allen and the other defendants to bring about a sale of the property in order to defeat Oliver of his rights and equities in the improvement placed on the land. It was also charged that there was in existence a prior deed of trust given by Bailey and Stovall on the property before it was sold to Allen, which constituted a valid and subsisting first lien against the property. The defendants, except Allen, answered the amended and supplemented bill, and averred that the said first deed of trust executed by Bailey and Stovall had been paid off and released since the institution of this suit. They denied that the personal property should be first sold in order to protect any right that Oliver might have, and alleged that the personal property would not pay the $2,000 note because it would not bring more than $400 or $600, and averred that all of the notes had become due and payable; denied that Allen was insolvent; refused to accept full payment of all of the notes which they claimed had then matured. They also set out in the answer that after the restraining order had been issued by the judges of the supreme court they had advertised Allen's personal property pledged as security for the $2,000 note, but that Allen had enjoined them from selling that property until they had exhausted their remedy against the real estate. When Oliver filed his amended and supplemental bill he tendered $2,119 in discharge of the $2,000 note which he claimed was all that was due at that time from Allen to defendants, which sum was received by the court, but upon refusal of acceptance by defendants it was placed in the hands of a special receiver to await the final decision of the matters involved.

No depositions were taken, and no evidence offered except two affidavits tendered by defendants to the effect that Allen's personal property covered by the deed of trust would

not bring more than $500 or $600 at a sale. On August 24th the court entered the decree complained of, dissolved the injunction, ordered the trustee to advertise on the same day the real estate and personal property secured by the deeds of trust, first selling the real estate and if the proceeds therefrom were not sufficient to pay off and discharge all of the indebtedness secured by the trust deeds, then remaining unpaid, with interest and costs of sale, he should then sell the personal property.

It appears that this suit and the one instituted by Allen against Kahle, trustee, were consolidated, and the injunction granted in the latter suit, restraining a sale of the personal property until after the real estate had been sold, was dissolved. The decree directed the trustee to first pay out of the proceeds of the sale of the property the indebtedness secured by the deed of trust from Allen to him as trustee, together with interest and costs and to retain in his hands any funds remaining, and to report to the next term of the court what amount came into his hands from the sale, and what sums he had paid out under the decree. The court then referred the cause to a commissioner to report to the next term of court the amount of money that Oliver had expended on improvements on the real estate and what sums he had realized from the rents collected therefrom. Oliver then moved a suspension for time to apply for an appeal and supersedeas, which the court refused.

The substance of the pleadings has been set out at some length, as there was no evidence. taken and practically no disagreement as to the facts, in order that the contentions and equities of the parties may be fully grasped.

The principal grounds upon which Oliver seeks a reversal of the decree are: (1) that by virtue of his lease contract and the erection of a valuable building upon the lot, he has an equity therein, which should be first protected to the extent of requiring a sale of the personal property of Allen and the amount realized therefrom credited on the indebtedness before the real estate should be sold, thus protecting his equity to that extent; (2) that a decree for the sale of the

real estate should not have been entered until it was determined and fixed in the decree the amount of the lien of the defendants thereon, and inasmuch as he averred that he was ready and willing to pay off the amount so adjudicated he should have been given a time in which to pay it before the trustee proceeded to execute the decree; (3) that by reason of the various extensions in payment of the $2,000 note, during which he placed his valuable improvements upon the lot, the defendants were not entitled to the benefit of the accelerating provision in their deed of trust, and that the court should have decided upon this contention before entering the decree; and that it was error to direct the trustee to sell without fixing the amount which should then be paid to the defendants by virtue of their notes; (4) that it was error, after the injunction had been dissolved, to refer the cause to a commissioner to report upon the amount of money expended by Oliver in the erection of the house and to ascertain the rents he had received therefrom; (5) and that it was error to retain his $2,119 which he had tendered and paid into court for the purpose of paying off the amount he then claimed due on the notes held by defendants, and to the return of which he was entitled upon the dissolution of the injunction.

Defendants assert, in support of the decree, that inasmuch as Oliver had obtained his lease and placed his improvements on the lot subsequently to the purchase money deed of trust, and with notice thereof, he had no right or equity in the property as against the enforcement of the purchase money deed of trust, but only a contingent right of action against his lessor; that not being a judgment creditor he has no right in the property which would entitle him to the assistance of equity in controlling, preventing or interfering with the sale of the property; that, under the accelerating clause of his deed of trust all of the purchase money notes became due upon default in the payment of any one of them; and that Oliver was not entitled to have the deed of trust exhausted against Allen's personal property before proceeding to assert their lien for purchase money against the real estate.

Did Oliver have such an interest on equity in the lot as would entitle him to redeem the lot from the operation of the deed of trust; to have the amount thereof ascertained by the court for that purpose, as well as all other liens thereon; and require defendants to exhaust their lien on the personal property before selling the real estate? Oliver's lease for 12 years coupled with his valuable improvements placed thereon under the terms of the lease, gives him a substantial equity in the lot. For the term of his lease he has all the rights of possession which formerly belonged to the lessor, can protect the premises from trespass or entry by a stranger or by the landlord himself, and is entitled to the use, rents, issues and profits. He steps into the shoes of the lessor, and is practically the owner of the property for a term of years. In a suit to foreclose a mortgage or to sell the property for liens thereon, he is vitally interested in saving the property from sale, in this case, more interested than the lessor, who has paid about $100 on the property while he has several thousand invested therein. He stands in the place of the landlord for the term of his lease, and in equity he should be granted the right and opportunity to pay off the liens, or redeem the property under the equity of redemption. His amended and supplemental bill asks for permission to redeem, and he avers his willingness and ability to do so. If the lessor cannot or will not redeem, reason and fair dealing would accord him this right. But it is asserted that his remedy is not to prevent a sale and consequent eviction, but to submit thereto and recover his damages against Allen who would be liable under the principles of law, as well as under his covenant to reimburse for all loss occasioned by failure to pay off any lien upon the property. We do not think this remedy, which, no doubt, he has, is exclusive. It may not be effective. A judgment against Allen might be abortive of fruition. It is stated that Allen is insolvent, which he does not deny, but it is denied for him by Stovall and Bailey, who desire a speedy sale of the property and payment of their lien. But Allen seems to be unable or unwilling to pay what is now demanded of him. Would he be able or

willing to pay damages? The remedy at law for reimbursement would be cumbersome, expensive, uncertain as to amount of damages, and very doubtful· of fruition. ''But where it is apparent that the damages sustained by a tenant through eviction cannot be compensated in law, equity will grant an injunction to protect his rights.'' Underhill Landlord and Tenant, sec. 700, p. 1189.

It is true that Oliver does not have a lien upon the property, but·it must be conceded that he has a substantial equity therein, which, while not of the dignity of a lien at law, is entitled to all the protection which equity can afford. The original bill was in the nature of a creditor's suit with a view of ascertaining the liens upon the property in their dignity and priority and for ascertaining what right or equity the plaintiff had therein by virtue of his lease contract and subsequent valuable improvements and to prevent sale until these could be decreed. Defendants answered that no liens existed upon the real estate except plaintiff's judgment and their deed of trust, and paid off plaintiff's judgment in order to expedite the enforcement of their claim, and thereupon the injunction against the sale under the deed of trust was refused, but the bill was not dismissed; and upon the granting of the injunction by judges of this court plaintiff amended his bill by charging that there was a subsisting lien against the property of a prior debt to that of defendants, and again prayed that the liens thereon should be fixed, denied that all of the purchase money notes held by defendants had become due and payable under the terms of their deed of trust, asked the court to determine that question, and proffered to pay what he conceived to be then due; and averred his readiness and willingness to pay whatever sum the court should adjudge to be due defendants and enforceable against the property; and again asked that defendants be required to exhaust the personal property and credit the amount received therefrom on the $2,000 note and thus reduce the lien upon the real estate to that extent.

Perhaps it is misleading to say that Oliver has no lien upon the land; in a court of law his interest would not be,so de-

nominated, but in equity it falls under the doctrine of equitable liens. The lease contract carried out by valuable improvements, coupled with dominion and possession creates a right or interest in or over the specific property, which a court of equity can lay hold of and by means of which equitable relief can be made effectual. The doctrine of equitable liens operating upon the property will furnish ground for equitable remedy instead of resorting to the pecuniary relief granted by a court of law. 3 Pom. Eq. sec. 1223. If a sale be made it is important to him and of like importance to Allen that the amount and status of this equity be fixed in order that each may know how and to what extent they shall bid in order to protect their equities in the surplus fund, if any, after paying the trust deed lien. To illustrate: if the property should sell for $20,000, what division of the remainder after paying this first lien would be made between Oliver and Allen? This would depend upon the respective values of the land and the improvements thereon at the time of sale and the value of the lease for the remainder of the term of twelve years. The bidding of each for the property would depend largely upon the benefits derived. Where property is sold at a judicial sale, generally the interests of the parties therein must first be determined, and if there be liens they must be decreed in the order of their dignity and priority, in order that each party interested may know how to bid to protect his rights. ''When, for any proper cause, a court of equity is called upon to take control of the property conveyed by a deed of trust to secure creditors, it generally goes on and has the trustee, or some one in his place, to administer the trusts under its direction, and with its sanction: has the claims and priorities of all parties ascertained and fixed before directing a sale, except for some good reason to be specially shown; and does not disburse the proceeds of sale until it can do complete justice to all, according to their respective rights.'' *Zell Guano Co.* v. *Heatherly,* 38 W. Va. 409. This quotation is from a case where there had been an assignment for the benefit of creditors, but it serves to accentuate the well known rule that a court of

equity once having taken jurisdiction will adjudicate the equities of the parties properly set up by the pleadings before sale. We are of opinion that the value of Oliver's equitable lien upon the premises should have been ascertained before decreeing sale.

It seems to us that the amount due plaintiff should have been fixed and determined before a sale of the property was directed. The court dissolved the injunction but continued jurisdiction of the cause and by its decree directed sale of the property through the trustee, placing him in a position analogous to that of a special commissioner. He received specific directions as to what he should do in the administration of the trust; he was directed to whom the money received from the sale of the property should be paid, but left it to the trustee to ascertain what amount should be paid. The judicial question as to whether all or a part of the notes secured by the deed of trust had become due and payable thereunder, was left to the determination and judgment of the trustee. Oliver did not know the amount he should pay in order to save the property from sale, and he was given no time in which to pay it. It is suggested that Oliver's proffer to pay any amount which the court might fix as being due and payable was not made in good faith; but if such an amount had been ascertained and a day given in which he could pay, otherwise the property to be sold, his good faith and intention would have been tested. We think, under all the facts and circumstances set out by the pleadings, that Oliver has an equitable lien upon the property and is standing in the shoes of his landlord; and having as substantial a right in the property for 12 years almost as much as if he had been the owner thereof for that period, should have been accorded the right to redeem and the specific sum necessary for redemption should have been determined by the court.

An issue was raised as to the amount due defendants under the trust deed, which was not determined by the decree. We think that the accelerating clause in the trust deed made all of the notes due at the option of the holder upon default

made in the payment of any of them. This exact point was decided in our recent case of *Morton* v. *Rock Bottom Coal Co.,* 91 W. Va. 169, 112 S. E. 396, in which there is a review of the authorities by Judge MILLER. See 19 R. C. L. p. 493, sec. 289; 27 Cyc. 1522. It is argued that the holders waived this right of acceleration by permitting renewal of the first note for three periods, and by so doing permitted Oliver innocently to build the house on the lot, thus taking an unconscionable advantage of him by declaring all of the notes due after the house had been built, and for this reason equity should relieve against the hardship. It does not appear when the house was built, whether before or after the last renewal. The $2,000 note was dated December 22, 1920, at four months, and three renewals would extend until December 22, 1921. Oliver's lease is dated September 1st, 1921, and the bill charges that "subsequently" to the date of the lease the house was built. Moreover, Oliver had notice of the provisions for renewal and the accelerating clause in the trust deed, and it cannot be said that he acted innocently.

Undoubtedly, Allen had the right to redeem, and we think, for reasons assigned, the same privilege should have been accorded to Oliver. We have decided in numerous cases that where a court takes jurisdiction and directs a sale of the property for debt thereon, those who are interested in the property and who are entitled to pay the debt should be given a day in which to do so before the sale is made, thus saving the costs and expenses of sale and protecting whatever equities in the property they may have. *Wiley* v. *Mahood,* 10 W. Va. 206; *Gapen* v. *Gapen,* 41 W. Va. 422.

Was Oliver entitled to have defendants first exhaust their lien against Allen's personal property before proceeding to sell the real estate? It is evident that defendants intended to secure the cash payment of $2,000 by their deed of trust upon the cleaning and pressing plant belonging to the purchaser. No cash payment was made, and in order to secure at least $2,000, they took this security. Had not the real estate become ample security for the purchase price by virtue of the improvements placed thereon by Oliver, it is more

than likely that defendants would have first sold the personal property before proceeding against the real estate. This "additional" security was evidently designed to take the place of and stand for a cash payment. Because their deed of trust on the personal property was designated as an "additional" security for the $2,000 it would not necessarily prevent them from exhausting that security before proceeding against the real estate. This defendants attempted to do after the injunction had been awarded, but it is asserted that they were prevented from so doing by an injunction obtained by Allen. We do not have the record of that case before us, and it does not appear that Oliver was a party to that suit, and his rights would not be precluded by that decision.

It is a postulate in the enforcement of liens and marshaling of assets for that purpose, that where one creditor has a lien on two pieces of property of a debtor, and another creditor has a lien on one of the pieces to which only he can resort for the payment of his debt, a court of equity will require the creditor having two securities to exhaust the one to which he only can resort for the payment of his debt before he is entitled to charge the other to which alone the other creditor can resort. *Bank* v. *Wilson*, 25 W. Va. 242; *Ball* v. *Setzer*, 33 W. Va. 444. "The general rule is, that if one creditor by virtue of a lien or interest, can resort to two funds, and another to one of them only, as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another, the former must seek satisfaction out of that fund which the latter cannot touch." 4 Pom. Eq. (4th ed.) sec. 1414.

While Oliver is not a lienor in the strict sense of the term, he is in the relation of a creditor to Allen, for Allen has not protected him in discharging the prior liens against the land. As between Allen and his co-defendant it might be equitable to defer enforcement of the debt against the personal property until after the lot is sold. That would depend largely upon their agreement as interpreted by their subsequent acts and the circumstances under which the agreement was made.

But since that time new equities have been created by Allen under the lease, and Allen should not be preferred and protected to the serious detriment and damage of his lessee. All of the parties were before the court, and Allen does not resist the prayer of Oliver that the personal property be first sold and applied to payment of the $2,000 note. It appears that his co-defendants are making that resistance for him. Although Oliver is not strictly a lien creditor, we think the principle above tersely stated by Pomeroy is applicable here. The personal property should be first sold and the proceeds applied to the payment or reduction of the first purchase money note. However, the trust deed lienors should not be unnecessarily delayed in the collection of their debt, and should not suffer because Oliver obtained an equity knowing of the existence of their superior right; and we perceive no reason why both the personal and real property should not be sold on the same day, if perchance, Oliver does not redeem after the amount of the trust debt is judicially determined and the proceeds of the personalty applicable thereto ascertained.

The money tendered by Oliver to pay the amount which he conceived was due and which is in the hands of the special receiver, having been refused by the holders of the notes, should be returned to him, and no doubt was overlooked in drafting the decree. No application was made for its return, so far as the record discloses.

The decree will be reversed and set aside and the cause remanded.

*Reversed and remanded.*