**Marion H. GUNTHER and Wife, Grace C. Gunther, Appellants,**

v.

**Harry R. WHITE, Trustee, and First Federal Savings and Loan Association of Chattanooga, Appellees.**

Supreme Court of Tennessee.

Jan. 15, 1973.

James F. Turner, Cunningham, Turner, Davis & Cook, Chattanooga, for appellants.

Harry Weill, Roberts, Weill, Ellis, Weems & Copeland, Chattanooga, for appellees.

OPINION

HUMPHREYS, Justice.

Appellants sued, asking that appellees be restrained from enforcing an acceleration provision in a trust deed. The Chancellor dismissed the suit on appellees' motion, pursuant to Rule 12.02 of RCP, that the complaint failed to state a claim upon which relief could be granted. Appellants have appealed assigning errors which raise the question whether an acceleration clause such as that in the deed of trust is valid and enforceable in Tennessee. We agree with the Chancellor that the acceleration clause is valid.

Appellants own certain real estate encumbered by a promissory note and deed of trust owing to appellees. In the deed of trust is this acceleration provision:

"8. If he (appellants) should convey to the property, or any interest therein, to any other party without first obtaining written consent from Holder; or should a creditor, receiver, or trustee in bankruptcy obtain any interest in the property or should any party obtain an interest by attachment or any means other than inheritance, the entire principal balance with interest and service charge accruing thereon shall become immediately due and payable at option of Holder."

Appellants negotiated a satisfactory sale of the property, in which the prospective purchaser conditioned his offer to purchase upon First Federal's consent that the purchaser might assume the obligations of the note and trust deed upon the same rate of interest, $6\frac{1}{4}\%$, as specified in the note and deed of trust. First Federal, relying on the acceleration provision quoted above, declined to consent to the transfer unless the purchaser would agree to increase the rate of interest from $6\frac{1}{4}\%$ to 8%. Appellants then filed suit, charging on these facts that the refusal on the part of appellees to permit the transfer on the basis of $6\frac{1}{4}\%$ interest "is not only in restraint of trade, against public policy, contrary to the provisions contained in said original note, a violation of the right to contract, but is also an act which, under the facts, unduly alienates the long established right of a party to sell and convey real estate subject to an existing mortgage." In this Court, appellants make the same contentions.

With respect to these contentions, it is sufficient to say that they are without merit. There are no provisions in the note or the deed of trust in any way limiting appellees' right to rely on the acceleration provision.

It is inconceivable that the laws against restraint of trade could be in any way in-

volved in this transaction, and appellants suggest nothing to sustain this proposition.

Appellees' reliance on the contract is not in violation of the right to contract. To the contrary, the right to rely thereon arises out of contract.

Nor, is appellees' reliance on the acceleration provision "an alienation of the long established right and custom of a party to sell and convey real estate subject to an existing mortgage." The right of the mortgagor to sell his equity is not involved. The acceleration provision recognizes this right. All it does, is to provide that when the mortgagor does this, the mortgagee has the right to demand payment of his debt in full.

This brings us to the real question, whether an acceleration provision such as this one is valid and enforceable where the admitted motive for exercising the option is to secure an increase in the rate of interest.

An excellent statement with citation of supporting cases stating the general rule on this subject is to be found in 55 Am. Jur.2d, Mortgages, § 371. The text, with supporting cases, reads: "The proposition is accepted without dispute that a stipulation in a mortgage providing that the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest or any instalment of principal upon maturity thereof, *or to comply with any other condition of the mortgage*, is a legal, valid, and enforceable stipulation, and is not in the nature of a penalty or forfeiture (Chicago, D. & V. R. Co. v. Fosdick, 106 U.S. 47, 27 L.Ed. 47, 1 S.Ct. 10; Olcott v. Bynum, 17 Wall (U.S.) 44, 21 L.Ed. 570; Graham v. Fitts, 53 Fla. 1046, 43 So. 512; Baker v. Wilkes, 43 Idaho 639, 252 P. 427, 51 ALR 1253; Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N.W. 507, 94 ALR 1338; Lotterer v. Leon, 138 Md. 318, 113 A. 887; A-Z Servicecenter, Inc. v. Segall, 334 Mass. 672, 138 N. E.2d 266 (recognizing rule); White v. Miller, 52 Minn. 367, 54 N.W. 736; Brown

v. Kennedy, 309 Mo. 335, 274 S.W. 357, 41 ALR 729; National L. Ins. Co. v. Butler, 61 Neb. 449, 85 N.W. 437; Murphy v. Fox (Okl) 278 P.2d 820; Luke v. Patterson, 192 Okl. 631, 139 P.2d 175, 148 ALR 679; Title & Trust Co. v. Security Bldgs. Corp., 129 Or. 262, 277 P. 85; Fant v. Thomas, 131 Va. 38, 108 S.E. 847, 19 ALR 280; Seattle Title Trust Co. v. Beggs, 146 Wash. 435, 263 P. 598; Oliver v. Stovall, 93 W.Va. 88, 115 S.E. 869; First Nat. Bank v. Citizens' State Bank, 11 Wyo. 32, 70 P. 726), which a court of equity will refuse to enforce. Federal Land Bank v. Wilmarth, 218 Iowa 339, 252 N.W. 507, 94 ALR 1338; Graf v. Hope Bldg. Corp., 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984; Murphy v. Fox (Okl.) 278 P.2d 820. Although a contrary rule has apparently been applied in some instances, Chicago, D. & V. R. Co. v. Fosdick, 106 U.S. 47, 27 L.Ed. 47, 1 S.Ct. 10; Olcott v. Bynum, 17 Wall (US) 44, 21 L.Ed. 570, it would seem that generally, accelerative provisions in mortgages are not even viewed with disfavor by the courts, but are construed and the intention of the parties ascertained by the same rules as other contracts. Swearingen v. Lahner, 93 Iowa 147, 61 N.W. 431; National L. Ins. Co. v. Butler, 61 Neb. 449, 85 N.W. 437. Sometimes, an agreement for acceleration is inferred from the terms of a particular mortgage. Thronateeska Pecan Co. v. Matthews (CA 5 Ga.) 277 F. 361; Warren v. Creevey, 87 Fla. 46, 99 So. 247. It is generally held, however, that the failure on the part of the mortgagor to comply with particular conditions of the mortgage will not accelerate the maturity thereof where the instrument does not contain a clause providing for acceleration—Better v. Williams, 203 Md. 613, 102 A.2d 750; Olshan v. Chrystal, 101 N.J.Eq. 799, 138 A. 884, 54 ALR 1227 (insurance); Bank v. Doherty, 29 Wash. 233, 69 P. 732, especially where another remedy is provided in the instrument in case of such default upon the part of the mortgagor, Olcott v. Bynum, 17 Wall (US) 44, 21 L.Ed. 570, or where the instrument provides for acceleration in the case of other specified defaults. Olshan v.

Chrystal, 101 N.J.Eq. 799, 138 A. 884, 54 ALR 1227. In some instances, acceleration has been precluded by statutory provision. Howell v. Western R. Co. (Howell v. McAden), 94 U.S. 463, 24 L.Ed. 254."

It has for sometime been the law in this jurisdiction that the exercise of an option to accelerate for breach of a condition does not amount to the enforcement of a forfeiture or a penalty which a court of equity will restrain. This was settled in Lee et al. v. Security Bank & Trust Co. et al., 124 Tenn. 582, 139 S.W. 690, from which we quote:

"The clear weight of authority is that under instruments containing provisions such as we have quoted from the trust deed made by the Lees, the mortgagee may, upon default made, exercise his option to accelerate the maturity of the notes, and make them all due, not only for purposes of foreclosure but for purposes of personal suit thereon. The principle is that it is a plain matter of contract, and the parties are entitled to have the contract enforced according to its terms; the trust deed and the notes being construed together as parts of one contract. The theory that such action on the part of the mortgagee is the enforcement of a forfeiture and should be restrained on that ground in a court of equity upon payment of the amount fallen due, is supported by some authorities, but is not recognized as sound in the majority of the later cases." 124 Tenn. 590, 139 S.W. 692.

It is generally accepted that a court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause in a mortgage where the condition making the option operative is the result of some *unconscionable* or *inequitable* conduct of the mortgagee, Johnson v. Gore, 224 Miss. 600, 80 So.2d 731; Freund v. Weisman, 101 N.J.Eq. 245, 137 A. 885, 53 A.L.R. 522; Weyand v. Park Terrace Co., 202 N.Y. 231, 95 N.E. 723; Hale v. Patton, 60 N.Y. 233; Murphy v.

Fox (Okl.) 278 P.2d 820; Weinberg v. Naher, 51 Wash. 591, 99 P. 736.

No case has been found, however, which holds that the exercise of the option to gain the benefit of a current interest rate falls into these categories. And, upon reflection, we can think of no reason why such exercise should be characterized as either unconscionable or inequitable. Although interest charges are subject to strict regulation, and to that end we have both constitutional and statutory provisions in regard thereto, Constitution of the State of Tennessee, Article XI, Section 7; Section 47-14-104 T.C.A., interest charges which are within the constitution and the statutes are valid. And, although some savor the subject of interest with a grimace, because of its too frequent association with usury, acts related to securing a current, lawful rate of interest are neither unconscionable nor inequitable.

On this subject Chancellor Brock cited Cherry v. Home Savings and Loan Association, 276 Cal.App.2d 574, 81 Cal.Rptr. 135 (1969); Stith v. Hudson City Savings Association, 63 Misc.2d 863, 313 N.Y.S.2d 804, People's Savings Ass'n v. Standard Industries, Inc., 22 Ohio App.2d 35, 257 N.E. 2d 406 (1970). And appellees have supplemented these cases by citing LaSala v. American Savings & Loan Association, 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113, decided by the Supreme Court of California en banc on October 21, 1971; Lazzareschi Investment Co. v. San Francisco Federal Savings and Loan Association, 22 Cal.App. 3d 303, 99 Cal.Rptr. 417 (1971) (rehearing denied March 16, 1972).

In Cherry v. Home Savings and Loan Association, supra, in discussing this subject, the California Court wrote:

"Secondly, loan agreements frequently permit a borrower to pay off a loan before it is due. When interest rates are high, a lender runs the risk they will drop and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender

with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security. This is merely one example of ways taken to minimize risks by sensible lenders.

"There is no inequity visible from such a provision. Thus, if a note is executed with a due date of January 31, that is one of its terms, and a borrower cannot be heard to urge that the inferred provisos of good faith and fair dealing permit him 'reasonably' to pay at a later date. (Comm.Code, §§ 3123, 3122.) Here, appellants Wickershim borrowed money from respondent under specified terms. Respondent did nothing to prevent or make difficult appellants' performance under the agreement. It did not, and could not, prevent the Wickershims from selling to Cherry if they so wished. But respondent could, and allegedly did by threatening to exercise its option to accelerate the debt, refuse to accept Cherry as owner of the security unless respondent received from him a higher return for the use of its money than obtained from the Wickershims. Such refusal on respondent's part demonstrated no lack of good faith or fair dealing, but merely insistence on its rights under the terms of the deed of trust. It had the power of free decision regarding use of its money by others, the right to determine in its own discretion whether it would exercise its option, and it had no obligation to act only in a manner which others might term 'reasonable'. Neither Cherry nor the Wickershims, all of whom were aware of the terms, can complain."

Finally analyzed, the situation here is simply that appellants can sell their property at a higher price if they can sell it at the lower interest rate. The appellees under their contract have the right to insist upon the repayment of their loan in the event of sale, so that they can relend the money at an increased interest rate, and so maintain their supply of lending money, at the level of their present cost of such money. In this situation, equity should not depart from the law which requires it to enforce valid contracts and strike down the acceleration option simply because its exercise will let the appellees, not the appellants, make the profit on the interest rate occasioned by the increased cost of money.

The assignments of error are overruled, and the decree of the Chancellor is made the decree of this Court.

DYER, C. J., CHATTIN and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.