382 So.2d 485 (1979)
Memnon TIERCE, II
v.
APS COMPANY and Campus Apartments Company.
78-231.
Supreme Court of Alabama.
November 2, 1979.
Rehearing Denied March 28, 1980.
Jule R. Herbert, Jr., Colin A. Barrett of Lee, Barrett & Mullins, Tuscaloosa, for appellant.
Robert B. Harwood, Jr., Tuscaloosa, for appellees.
EMBRY, Justice.
This is an appeal from a final decree permanently enjoining appellant/defendant, Memnon Tierce, II from foreclosing a mortgage on certain property because of a prior sale of that property by appellee/plaintiff APS Company, to the other appellee/plaintiff Campus Apartments Company. We reverse.
APS Company is a partnership composed of three persons: C. H. Armstrong, A. W. Patton, Jr., and Alonzo J. Strickland, III. In May of 1975, APS entered into a contract, styled a Bond for Title, with Tierce. In the contract Tierce agreed to sell a certain 24 unit apartment complex to APS for the sum of $159,221.80. According to the terms of the contract, Tierce would retain title to the real estate until the principal due under the agreement was reduced to $155,000. When the principal was so reduced Tierce was required, under the terms *486 of the contract, to execute a warranty deed to APS and to retain a purchase money mortgage interest in the property, accepting APS's note and mortgage for the balance due. The promissory note for the balance was to be on the same terms regarding interest rate and repayment schedule as those contained in the Bond for Title. The Bond for Title, or contract, also contained language to the effect that APS would not transfer or assign the contract or any rights therein and would not lease or otherwise transfer possession of the premises, the subject of this suit, without the written consent of Tierce.
APS did in fact reduce the principal to $155,000 and requested Tierce to perform as agreed. APS's lawyer prepared, and submitted to Tierce, a mortgage and deed for him to accept. Tierce rejected the proposed mortgage on the grounds that it gave APS rights not granted in the original contract and was inconsistent with it. APS's attorney prepared another mortgage, which Tierce accepted. This second mortgage, which the three partners of APS executed, contained the following "due on sale" clause:
"Debtor shall be in default under this agreement upon the happening of any one of the following events or conditions:

* * * * * *
"4. Upon the substantial damage, waste, danger or misuse, sale or encumbrance of or to Property. [Emphasis added.]

* * * * * *
"Upon such default Mortgagee may, at his option declare all obligations secured hereby immediately due and payable. * * *."
Subsequent to the execution of the deed and mortgage, APS sold the premises to appellee/plaintiff Campus Apartments Company, a partnership composed of Alonzo J. Strickland, III, and David C. Smitherman. Campus Apartments agreed to assume the mortgage held by Tierce. APS did not notify Tierce of the transfer, nor did it attempt to obtain Tierce's consent to it.
Tierce accepted two checks from Smitherman for mortgage payments. Tierce then inquired of APS about the identity of Smitherman. He was then informed of the transfer of the property to Campus Apartments. The tendency of the evidence is that Tierce communicated to APS that he would accept the transfer if Campus Apartments agreed to pay a higher interest rate.
Campus Apartments refused to pay a higher interest rate, whereupon, Tierce gave, through counsel, written notice to APS of its default and his declaration that APS's obligations secured by the mortgage were immediately due and payable. Subsequent to delivery of this notice, APS and Campus Apartments instituted suit against Tierce asking, inter alia, the court to declare that APS had not defaulted and to enjoin Tierce from foreclosing. Tierce counterclaimed for a judicial foreclosure.
A trial on the merits was had at which APS's attorney, who had provided the mortgage instruments, testified he did not know the form he used contained a "due on sale" clause and that APS had not requested that such a clause be contained in the instrument.
The trial court expressly determined the following: (1) the "due on sale" clause was not openly stated and bargained for; (2) the conveyance to Campus Apartments by APS did not endanger Tierce's security; (3) the conveyance to Campus Apartments was not a default; and (4) Tierce's purpose in exercising its option to accelerate payment by foreclosure was to obtain an increased interest rate. Based on these findings, the trial court permanently enjoined Tierce from foreclosing on the mortgage in question for the reason of the conveyance to Campus Apartments. This appeal ensued.
The determinative issue on this appeal is whether a "due on sale" clause is per se invalid, unless a separate consideration has been given for it, when the mortgagee's primary purpose for accelerating payment is to obtain a higher interest rate. We find in the negative as to that issue and, therefore, reverse.
*487 In 1907, this court expressly held in Tidwell v. Wittmeir, 150 Ala. 253, 43 So. 782 (1907), that "due on sale" clauses are enforceable. Justice Anderson stated in that opinion:
"The other phase of the amendment is doubtless intended to test the right of the mortgagee to claim that all of the installments became due upon a sale of the property by the mortgagor to the complainant. The mortgage clearly provides that all of the installments should become due in case of a sale of the property. Counsel contend that this is an unreasonable condition in the mortgage, as the complainant would lose interest by paying all of the debt before some of the payments became due under the original terms of the mortgage. This clause was put in the mortgage for a purpose, and the parties thereto were bound by it. It is not within the power of this court to make contracts for parties. The complainant was not only chargeable with notice as to the character of the mortgage on the land he was buying, but the deed conveying the land to him recited the existence of the mortgage and he purchased the land subject to said mortgage. He knew that, the very moment the mortgagor conveyed him the land, all of the installments fell due under the express terms of the mortgage. He was not compelled to buy the land, and, after doing so subject to the mortgage, he is in no position to complain of a clause contained therein." 150 Ala. at 258, 43 So. at 783.
This holding in Tidwell has never been altered or reversed.
However, in 1977, the Court of Civil Appeals decided the case of First Southern Federal Sav. & Loan Ass'n of Mobile v. Britton, 345 So.2d 300 (Ala.Civ.App.1977). In that case the appellate court stated that Tidwell was the governing authority in Alabama, then decided the case contrary to Tidwell, asserting, however, its holding not to be contrary to that case. Despite this statement in Britton, the language used in the decision is contrary to the language used in Tidwell.
In Tidwell, this court clearly stated that it would not attempt to rewrite contracts for the parties. It was made clear that "due on sale" clauses were enforceable. The holding was not conditioned on the intent of the mortgagee when enforcing the clause.
In Britton, the Court of Civil Appeals held, in effect, that the court must look to the purposes of the lender in enforcing "due on sale" clauses. The appellate court in Britton indicated that "due on sale" clauses would be enforceable if the lender's enforcement of such a clause was based on a legitimate business purpose; however, the purpose of forcing an acceptance of an increased interest rate from persons attempting to assume mortgages was held not to be a valid business purpose. Hence, "due on sale" clauses would not be enforceable in such situations; in essence, that mortgagees could not enforce "due on sale" clauses, if the motive was to obtain an increased interest rate from a buyer, unless the clause had been expressly and separately bargained for.
We find the holding in Britton in error. Clearly the holding in Britton is not the majority rule in the United States. See generally Annotation, Acceleration ClauseTransfer of Property, 69 A.L.R.3d 713 (1976). We do, however, recognize that some courts have decided cases as Britton was decided. See, e. g. Mutual Federal Savings & Loan Association v. Wisconsin Wire Works, 58 Wis.2d 99, 205 N.W.2d 762 (1973). See also 69 A.L.R.3d 713, § 13(c). We further recognize that "due on sale" clauses are not enforceable in every situation since mortgage foreclosure is generally an equitable matter; thus a court of equity might refuse to foreclose a mortgage when an acceleration of the due date for payment of the note secured by it would render the acceleration unconscionable, and the result would be inequitable and unjust.
We cannot, however, agree that the desire of a lender to terminate loans upon transfers, due to rising interest rates, is not a valid business purpose, thus rendering a *488 "due on sale" clause unconscionable and unenforceable when such desire is the primary purpose for acceleration. With the tremendous rise in interest rates, lenders are forced to try to obtain higher interest rates because they are forced to pay higher interest in order to obtain funds for lending. We find the Tennessee Supreme Court concisely summarizing the rationale behind our holding in Gunther v. White, 489 S.W.2d 529 (Tenn.1973):
"Finally analyzed, the situation here is simply that appellants can sell their property at a higher price if they can sell it at the lower interest rate. The appellees under their contract have the right to insist upon the repayment of their loan in the event of sale, so that they can relend the money at an increased interest rate, and so maintain their supply of lending money, at the level of their present cost of such money. In this situation, equity should not depart from the law which requires it to enforce valid contracts and strike down the acceleration option simply because its exercise will let the appellees, not the appellants, make the profit on the interest rate occasioned by the increased cost of money." 489 S.W.2d at 532.
In this case there was no evidence it would be unconscionable for Tierce to foreclose on the mortgage which APS had freely executed. In fact, APS's own attorney prepared the mortgage instrument. It is clear that the trial court's decree is erroneous as a matter of law, therefore, must be reversed.
For the reasons assigned, the judgment is due to be, and is hereby, reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH and ALMON, JJ., concur.
FAULKNER, J., concurs specially.
FAULKNER, Justice (concurring specially):
I concur in the majority opinion authored by Mr. Justice Embry because there are no facts shown here that render the invocation of the "due on sale clause" unconscionable.

ON APPLICATION FOR REHEARING
TORBERT, Chief Justice (dissenting).
A majority of this Court has denied application for rehearing in this case. I originally voted with the majority to reverse and remand the decision of the Tuscaloosa Circuit Court permanently enjoining Tierce from foreclosing on the mortgage in question for the reason of the conveyance to Campus Apartments. I concurred with the original majority opinion because I agreed with the holding that the "due on sale" clause is not per se invalid. I am still committed to that proposition of law. Both parties filed excellent briefs on application for rehearing and upon further study and reflection, I am now convinced that rehearing should be granted.
The traditional and customary purpose of the "due on sale" clause has been to protect against impairment of the lender's security. The trial court specifically held that Tierce had adequate security and that the conveyance from APS Company to Campus Apartments Company did not endanger the security. The trial court further specifically held that the defendant's purpose in threatening to exercise the option of accelerated payment by foreclosure was to force an acceptance of an increase in the interest rate. A majority of this Court has rewritten the agreement between the parties in the instant case and the meaning of the "due on sale" clause in many other existing agreements so that that clause may legally be used for the hidden purpose, not within the contemplation of the parties when they signed the agreement, of allowing the mortgagee upon default to condition his acceptance of a transferee of the mortgagor, upon the transferee's agreement to pay a higher rate of interest than the interest agreed to in the contract. I would hold that the parties may, if they so desire, contract that the "due on sale" clause may be used as a device by the mortgagee to obtain a higher *489 rate of interest upon the mortgagor's transfer of his property. The contract in the instant case provides: "Upon such default [sale or encumbrance] mortgagee may at his option declare all obligations secured hereby immediately due and payable." The contract does not provide that the mortgagee may at his option upon such default (i. e., sale of the property) condition his acceptance of the transferee upon the transferee's agreement to pay a higher rate of interest than the interest originally agreed to. A majority of this Court would allow one party to a contract to unilaterally change the provisions of that contract, or at least give new meanings to old terms with well settled meanings. I would honor the party's right to contract and give effect to their agreement as it appears in the contract.
In the order permanently enjoining Memnon Tierce, II, from foreclosing on the APS mortgage because of the conveyance from APS to Campus Apartments, the trial court made the following findings of fact:
1. That the mortgage from APS Company to the Defendant, Memnon Tierce, II, did contain a due-on-sale clause, but that the said due-on-sale clause was not openly stated and bargained for from the inception of the mortgage.
2. . . [T]here has been no waste of the property; and that the Defendant, Memnon Tierce, II, has adequate security and is adequately protected as to the indebtedness due him secured by the mortgage, and the Court finds that the conveyance did not endanger the security or increase the Defendant's anticipated risk.
4. That the Defendant's purpose in threatening to exercise the option of accelerating payment by foreclosure was to force an acceptance of an increase of the interest rate for the remainder of the term and as a means to advance the financial interest of the Defendant, and the Court is of the opinion that the threat of acceleration was not due to an increase of the risk to the Defendant or jeopardy to Defendant's security. [Emphasis added.]
The holding of the trial court, ore tenus, as to those findings of fact should not be reversed unless plainly erroneous. Baptist Foundation of Alabama v. Penn, 295 Ala. 122, 324 So.2d 766 (1976). The findings are supported by the evidence, and are not palpably erroneous. When the findings of fact are applied to the only pronouncement of the appellate courts of this state[1](First Southern Federal Savings and Loan Association of Mobile v. Britton, 345 So.2d 300 (Ala.Civ.App.1977)) on the narrow issue presented, the conclusion that the trial court must be affirmed is inescapable.
The question dispositive of this case is: Whether a "due-on-sale" clause may be used by a mortgagee to force a higher rate of interest on the transferee of the mortgagor by threatening foreclosure, where such use was not stated in the contract, where the clause was not openly bargained for, and where the conveyance did not endanger the mortgagee's security. I would answer that question in the negative and hold that the "due-on-sale" clause gives the mortgagee the right to approve or reject the assumption but not the right to condition approval of the assumption only at a greater rate of interest unless the contract specifically provides otherwise. The "due-on-sale" clauses have traditionally been used as a device to protect against impairment of the mortgagee's security, not as a device to insure that the contract interest rate keeps up with spiralling inflation.[2]
The basic unfairness which results from sanctioning the use of a "due-on-sale" *490 clause to accomplish the hidden purpose of raising interest rates is set forth with simplicity and clarity in a student comment in the Arkansas Law Review:
No doubt an argument can be made that a risk from which the lender should be protected is rising interest rates. The point is, however, that history and custom indicate that consent has never been denied unless the transferee or purchaser was a bad credit risk or a change in the possessory interest would endanger the security interest. Moreover, public policy has heretofore always preferred the free alienability of property over that of the freedom of contract.
In circumspection, therefore, the enforcement of "due-on-sale" clauses should correspond with the expectations of the parties at the execution of the agreement. If the lender wants to extend control over the property so that the lending rate can be renegotiated, a clear statement of such intent should be evident. Otherwise, lenders should be held to traditional notions of what circumstances justify denial of consent, namely possession or assumption which jeopardizes the lender's security interest. [Footnotes omitted.]
Note, "MortgagesA Catalogue and Critique on the Role of Equity in the Enforcement of Modern Day `Due-on-Sale' Clauses," 26 Ark.L.Rev. 485 (1973) (emphasis added).
I recognize that the courts of other jurisdictions are split on this issue[3] but I believe the best analysis of this problem is contained in the well-reasoned opinion of our own Court of Civil Appeals in First Southern Federal Savings and Loan Association of Mobile v. Britton, 345 So.2d 300 (Ala.Civ.App.1977):

The purpose of the clause is to insure that the party originally bargained with and upon whose economic and financial situation and reputation money was loaned, credit extended and risk of repayment assumed, will remain as owner and in possession of the security. There can be no question but that the risk of waste, failure of maintenance and resultant deterioration in the property may be greatly increased by sale to one of whom the mortgagee knows nothing. The lending of money is a personal matter between lender and borrower. It cannot be said that the conditioning of the continuation of the relationship upon the retention of the ownership of the property standing as security for the debt is unreasonable or inequitable.
However, in this case, it is openly stated that the purpose of threatening to exercise the option of accelerating payment was to force an acceptance of an increase of the rate of interest for the remainder of the term of the mortgage. There is no indication that acceleration was due to the increase of risk or jeopardy to the security. The purpose of the clause was not being served by the threatened acceleration but the unrelated financial interest of the lender was the reason for the acceleration.
The terms of the clause give no indication that an interest of the mortgagee other than the protection of its security is to provide the reason for exercising the option to accelerate. We do not consider the right to exercise the option to be an arbitrary one. Such right is dependent upon the sale producing a threat to a legitimate interest of the mortgagee sought to be protected by the clause. Such legitimate interests are the protection and preserving of the security from waste and depreciation and the guarding against the moral risks or the reasonable possibility of having to resort to the security after default. [Citation omitted.]
We do not say that the mortgagee may not specifically contract for the option to accelerate in the event of sale unless the purchaser agrees to payment of increased interest up to the current rate at time of assumption of the unpaid mortgage balance. We do hold that such purpose may not be hidden behind a clause which is assumed to only provide protection for *491 the security. If the clause is to be used to advance the financial interest of the lender through requirement of payment of a penalty or an increase in interest rate, such purpose must be openly stated and bargained for from the inception of the contract. If the condition for the approval of a sale may be hidden and be other than for the protection of the historical interest of the mortgagee, the mortgagor will be at the mercy of the mortgagee. It is therefore the opinion of this court that under the stipulation before the trial court, appellant had no justification for refusing consent to the transfer. The due-on-sale clause appearing in this mortgage may not be used as an instrument to require an increase in interest rate nor for collecting a penalty in order to prevent acceleration and foreclosure. We consider this holding not to be contrary to the decision of the Supreme Court in Tidwell v. Wittmeier, supra.

First Southern Federal Savings and Loan Association of Mobile v. Britton, 345 So.2d 300, 303-304 (Ala.Civ.App.1977) (emphasis added).
In the instant case the trial court held: (1) The foreclosure based on the "due-on-sale" clause was not necessary to protect the lender's security because the conveyance did not impair the lender's security, and (2) the hidden purpose of the lender in using the "due-on-sale" clause to effectuate a foreclosure was to obtain a higher rate of interest. I would hold that the "due-on-sale" clause may be used only in accord with the parties' expectations for the purpose traditionally, historically, and customarily ascribed to that clause, i. e., protection against impairment of the lender's security. If the parties wish to condition the mortgagor's right to transfer his property on acceptance of a higher rate of interest to be paid to the mortgagee, they should so provide, explicitly, in the contract.
MADDOX and SHORES, JJ., concur.
NOTES
[1] It is true that this Court held "due-on-sale" clauses enforceable, Tidwell v. Wittmeier, 150 Ala. 253, 43 So. 782 (1907), but that case did not hold that such clauses may be used to force on the transferee of the mortgagor a higher rate of interest than that agreed upon by the parties to the contract.
[2] First Southern Federal Savings and Loan Association of Mobile v. Britton, 345 So.2d 300 (Ala.Civ.App.1977); Annot., 69 A.L.R.3rd 713 at 728 (1976).
[3] See cases cited in exhaustive Annot., 69 A.L.R.3rd 713 (1976).